RESERVE PETROLEUM COMPANY ET AL V.
E. M. HARP ET AL.

No. A-2286. Decided February 8, 1950.
(226 S. W., 2d Series, 839.)

*Klett, Bean, Evans & Justice* and *A. Doyle Justice,* all of Lubbock,. for petitioners.

. ` The Court of Civil Appeals erred in holding that petitioners cannot maintain trespass to try title without first reforming and correcting the deeds, in an action where petitioners claim under deeds containing sufficient true description to identify the land, after eliminating that part of the descriptive which is false. Texas Osage Co-Op Royalty Pool v. Colwell, 205 S. W. (2d) 93, 95; Maupin v. Chaney, 139 Texas 426, 163 S. W. (2d) 380, 383; Arambula v. Sullivan, 80 Texas 615, 619, 16 S. W. 436.

*Lucian Morehead* and *Z. Parrish,* both of Plainview, for respondents.

` In reply to the above propositions cited Smith v. Sorelle, 126 Texas 353, 87 S. W. (2d) 703; Miller v. Hodges, 260 S. W. 168; Munger v. Daugherty, 138 S. W. 1070.

. MR. JUSTICE SMEDLEY delivered the opinion of the Court.

This action in trespass to try title was filed by petitioners, Reserve Petroleum Company and Gulf Coast Western Oil Company, for the recovery of an undivided one-half interest in the oil, gas and to other minerals in the west one-half of Section 70, Block A4, Abstract 1304, E. M. Harp Survey, Certificate 725, .T. T. Ry. Co. in Hale County. The district court rendered judgment in favor of petitioners for an undivided one-half interest in all minerals in the south 120 acres of the west one-half of the section, and adjudged that they take nothing as to the minerals in the north 200 acres of the west one-half of the section. On appeal by petitioners the Court of Civil Appeals affirmed the trial court's judgment as to the 200 acres but, sustaining a cross assignment by respondents, rendered judgment that petitioners take nothing as to the 120 acres. 221 S. W. (2d) 366.

The petition for writ of error presents two points, both of which relate to the 120 acre tract. The first of these attacks the conclusion of the Court of Civil Appeals that the description of the land contained in two deeds under which petitioners claim is fatally defective. These deeds thus describe the land: "The following described land situated in Hale County, State of Texas, to wit: West 1/2 of Section #7, Block A4, Abstract #1304, E. M. Harp Survey, containing 320 acres more or less." The only difference between the description of the land for which petitioners sue and that above quoted from the two

deeds is that the number of the section as set out in the petition is "70", and the number of the section appearing in the two deeds is "7".

■ It is clearly shown by the entire record that the number of the section as given in the deeds is false description. It may be observed also that the falsity of this part of the description is shown, as well as in other ways, by the fact that there could not be in the block a section No. 7 designated E. M. Harp Survey. This, because the surveys in block A4 in Hale County were made under alternate certificates issued to railroad companies, and under the law the odd numbered, sections were granted to the railroad companies and the even numbered sections were set apart to the public school fund, to be sold to individuals. Section 7, being an odd numbered survey, would be described by the use of the name of the railroad company and not by the use of the name of an individual.

■ The case is one for the application of the rule that the part of a description that is false will be disregarded or rejected as surplusage and the deed will be sustained as valid if, after the rejection of what is false, the remaining words of the description are sufficient to identify the land with certainty. Arambula v. Sullivan, 80 Texas 615, 619-620, 16 S. W. 436; Cartwright v. Trueblood, 90 Texas 535, 538-539, 39 S. W. 930; Maupin v. Chaney, 139 Texas 426, 431, 163 S. W. (2d) 380; Vaughn v. Continental Royalty Company (5th Cir.) 116 Fed. (2d) 72. Rejecting the number "7" appearing in the deeds, the remaining words of the description of the land are: "situated in Hale County, State of Texas, to wit, West 1/2 of Section #_____, Block A4, Abstract #1304, E. M. Harp Survey, containing 320 acres more or less." The conclusion of the Court of Civil Appeals, with which we do not agree, that the abstract number appearing in the deeds does not serve to identify the land, seems to be chargeable to a failure to take into consideration the established practice for many years of the General Land Office in designating surveys and parts of surveys by abstract numbers.

Article 5252 of the Revised Civil Statutes, Article 5253 prior to its repeal in 1945, and Article 5254 before and after its amendment in 1945, make it the duty of the Commissioner of the General Land Office to compile and constantly correct an abstract of patented, titled and surveyed lands, and to cause copies of supplemental abstract to be printed and bound for distribution among those officers of the state and counties whose duties re-

quire their use. By Article 7194 the Commissioner of the General Land Office is required to furnish to the assessors of taxes a correct abstract of all surveys of land and the number of acres therein in their respective counties, and to send each year an additional list of new surveys. Article 7195 makes it the duty of the commissioners court of each county to furnish to it tax assessor abstract books, with specified printed headings and forms, containing blanks for abstract numbers, certificate numbers, names to whom certificates were issued and other descriptive data; and Article 7196 provides that the blanks are to be filled by the assessors "with the abstract number", name of party to whom certificate was issued, number of acres, etc.

■ The courts will take judicial notice of the construction placed upon these statutes by the Commissioner of the General Land Office and of his long continued practice in the performance of his official duties under them. Short v. Carter & Bro., 133 Texas 202, 211, 126 S. W. (2d) 953; Maryland Casualty Co. v. Hendrick Memorial Hospital, 141 Texas 23, 28, 169 S. W. (2d) 969; Texas Employers' Insurance Ass'n v. Holmes, 145 Texas 158, 171, 173, 196 S. W. (2d) 390, 397, 399.

■ That construction and long continued and uniform practice on the part of the Commissiner of the General Land Office are as follows: Each survey in every county, as it passes or has passed into private ownership, is given an abstract number by the Commissioner of the General Land Office, *no two surveys in any one county being given the same number*. Abstract books showing these numbers for the surveys are compiled and copies of the books are sent to the Comptroller and to the tax assessors of the counties. The books are supplemented from time to time as portions of surveys are segregated or pass into other ownership, but the abstract number that was originally given to a survey remains as the abstract number of the survey or of a part of it. That number is never assigned or transferred to any other survey. As any part of the survey is segregated from it or passes into other ownership and evidence of the segregation or change of ownership is filed in the Land Office, a new abstract number is given to that part of the survey, but the original number continues to be the abstract number of what remains of the original survey after a part has been segregated. This process continues as other segregations are made out of the survey, a new abstract number being given to the part segregated from the survey and the original number remaining as the abstract number of what is left of the survey. Thus always the abstract number originally given to the survey con-

tinues to be the abstract number of that survey or of some part of it. The abstract number first given the survey never applies or belongs to any other survey or to any part of any other survey.

Documentary evidence in the record in this case, from the General Land Office, the office of the Comptroller and the office of the tax assessor of Hale County, shows that this same practice was followed with respect to Section 70, Block A4, E. M. Harp Survey in Hale County. The section was set apart to the public school fund. It was sold to E. M. Harp in 1898. The survey was given abstract number 1304, and, according to the practice of the General Land Office, that abstract number was never given to any other survey in Hale County. It is shown by the file wrapper in the General Land Office for Section 70 and by pages of the abstract books in evidence, that the first part of Section 70 segregated from the survey was the northeast one-fourth. The abstract books from the Land Office for 1925 to 1926 give 1304 as the abstract number for the west one-half and the southeast one-fourth of Section 70, that being the first change, and having been made because the northeast one-fourth had been segregated from the survey. The abstract books in evidence further show that the north part of the west half of Section 70, 200 acres, was segregated from the survey and patented in 1936, and that abstract number 2504 was given to that tract, leaving 1304 as the abstract number of the south 120 acres of the west half and the southeast one-fourth of the section; that the south 120 acres of the west one-half was segregated and patented on April 15, 1939, and abstract number 2509 given to that tract; and that thereafter 1304 continued to be the abstract number of the southeast one-fourth of the section, which was patented October 23, 1942.

The endorsements on the file wrapper in the General Land Office, made to contain the filed papers for Section 70, reflect the same facts as those evidenced by the abstract books with respect to the segregations or "splits" from the section. This wrapper, first made for the whole of the section and bearing the endorsement of "abstract 1304" continued in use for the part of the survey remaining after the various "splits" until finally it became the wrapper for the southeast one-fourth of the section. Always the abstract number 1304 remained unchanged.

Abstract number 1304, therefore, in so far as the section number is concerned, always has reference in the abstract books,

the records of the General Land Office, to Section 70, and not to any other section. The words "Abstract #1304" appearing in the mineral deeds afford the means or data for certain identification of the land, for they point to existing public records where abstract number 1304 is always given to Section 70 or a part of that section, and is never applied to any other section or any part of any other section. With the false part of the description in the deeds, the number of the section, disregarded, the description that remains clearly evidences the intention of the grantors to convey the west one-half of a section of land in Block A4 in Hale County, which is an E. M. Harp Survey and has 1304 as its abstract number. The only section in Hale County that has that abstract number, or ever had it, is Section 70, for which petitioners sue.

The sufficiency and certainty of the aid given to the description by the abstract number 1304 are further and particularly evidenced by the record in this, that the two mineral deeds were executed in 1931 and all of the documentary evidence, including the abstract books, certificates from the Comptroller's office and records of the county tax assessor and collector's office, establish the fact, without dispute, that in the year 1931 the abstract number of the west one-half of Section 70 was 1304. The fact that another part of Section 70 had in 1931 the same abstract number is immaterial, for we are concerned only with the west one-half of the section. No west one-half of any survey in Hale County, except the west one-half of Section 70, had 1304 as its abstract number.

■ We cannot sustain the second point in the application for writ of error. It makes the contention that since the respondents undertook by contract and by the two mineral deeds to convey to petitioners' predecessors an undivided one-half interest in the minerals in the 320 acre tract of land, petitioners' predecessors and petitioners "became entitled to a total of 160 acres of oil, gas and minerals" and that when respondent defeated petitioners' recovery of any interest in the north 200 acres of the one-half section, on the ground that the land was homestead and the deeds were not acknowledged, petitioners thereupon became entitled to recover "all of the 120 acres of minerals in the south 120 acres of land".

Petitioners have cited no authorities, and we have found none, that sustain this contention. Moreover, neither the pleadings nor the proof would support a judgment in petitioners' favor for all of the minerals in the south 120 acres of the one-half

section. The petition alleges a formal action in trespass to try title for the recovery of an undivided one-half interest in the minerals in the west one-half of the section. It does not allege that the plaintiffs have either a contract or a deed for 160 acres of mineral rights out of the 120 acre tract. It alleges no facts which would entitle the plaintiffs to all the minerals in the south 120 acres. Petitioners' suit for an interest in the north 200 acres failed because the land was homestead, and since petitioners had sued only for a one-half interest in the minerals in the entire 320 acres, they could recover only an undivided one-half interest in the minerals in the remaining 120 acres.

The deeds under which petitioners claim recite that they convey an undivided one-half interest in the minerals in the 320 acre tract. They do not purport to convey 160 mineral acres out of the tract. By the terms of the contract for the sale or pooling of mineral rights, which respondents executed at the time the deeds were signed, respondents agreed to convey to petitioners' predecessors in title an undivided one-eighth interest and an undivided three-eighths interest in the minerals in the 320 acre tract. This was not an agreement to convey either 160 or 120 mineral acres out of the tract.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed. Costs in the Court of Civil Appeals are taxed against petitioners and costs in this Court are taxed against respondents.

Opinion delivered February 8, 1950.

Associate Justice Griffin disqualified and not sitting.

No rehearing filed.