**Gerald F. STONE, Appellant,**

v.

**James WILLIAMS et al., Appellees.**

**No. 13687.**

Court of Civil Appeals of Texas.
Houston.
May 31, 1962.

Rehearing Denied June 21, 1962.

Herbert Finkelstein, Houston, for appellant.

Philip M. Shafer; Stanley F. Swenson, Houston, for appellees.

BELL, Chief Justice.

Gerald F. Stone sued James Williams and his wife, Ruth Williams, and H. C. Williams, the brother of James Williams. We will hereafter refer to James and Ruth Williams as appellees. The suit as reflected by appellant's third amended original petition was in trespass to try title whereby he sought to recover title and possession of the East ½ of Lot 12 and all of Lot 13 in Block 12 in Blossom Heights, *Section 2*, an addition in Harris County out of the E. P. Whitehead Survey in Harris County. Alternatively, he sought foreclosure of a deed of trust lien given to secure a $6,000.00 note, but as the deed of trust described the property as being in Blossom Heights in the E. P. Whitehead Survey instead of Blossom Heights, Section 2, he sought reformation because of mutual mistake. Also alternatively, he sought reformation of a mechanic's lien contract and foreclosure to satisfy the cost of repairs in the amount of $2,600.00 and also sought foreclosure of a vendor's lien on the theory of his being subrogated to the lien of Lewis and Inkley & Company, the vendors, to whom he paid $1,041.91 of the purchase price of the lot.

The appellees defended by pleading a general denial and not guilty and on the theory that all rights asserted by appellant were acquired as a result of fraud practiced on them by appellant and that there was a failure of consideration.

On trial to a jury, the jury answered issues submitted in a manner so as to estab-

lish fraud. The court rendered judgment against appellant.

The evidence reflects that on May 18, 1956 L. M. Inkley as vendor executed what is called "Contract for Deed" to James Williams and wife, Ruth Williams, as purchasers, under the terms of which he agreed to convey to them the "E. ½ of Lot 12 and all of Lot 13, Block 12, (80 X 125) in Blossom Heights, a suburban addition to the City of Houston, Harris County, Texas, said subdivision being a part of the E. P. Whitehead Survey," upon the payment of $1,192.50. The sum of $15.00 was paid down and the balance was payable, with interest, at the rate of $13.00 per month. Sometime thereafter James Williams bought a house and moved it onto the property. He wanted to sell the house and lot to his brother, H. C. Williams, for $4,000.00. However, James wanted all of his money and his brother had only $250.00 to pay in cash. Without giving the details of his efforts, it suffices to say that James made some effort to arrange for a loan on the property so his brother could purchase it and James could get his money. He was not successful. Then in some way not entirely clear the appellant showed up. James testified he told appellant he wanted to see about financing so the property could be sold to his brother. Appellant told him the house needed some repairs and estimated they would amount to about $1,500.00. Appellant told him he and his wife would have to execute a note and mechanic's lien but they would not have to pay the note but the brother would assume the note. Appellant further represented the property would be sold to the brother for $6,000.00, the amount of the note, and appellant would pay for the repairs, the balance owing Inkley and Lewis and would then pay him $3,000.00. Contemporaneously with these representations, and in reliance on them, appellees on December 21, 1957, executed a note for $6,000.00 and a mechanic's lien contract covering the above described property in Blossom

Heights. After certain repairs were completed and on January 8, 1958, appellees executed their note for $6,000.00 and a deed of trust on the property in Blossom Heights. This last note was in renewal of the temporary note of December 21, 1957, and was payable in monthly installments of $50.00, the first installment being due February 10, 1958. James testified that appellant repeated his representations at this time and promised him the $3,000.00 the next day. Though James has sought payment appellant has consistently refused payment and denied his promise to pay and has contended his agreement was only to pay Inkley and Lewis $1,041.91 the balance of the purchase price and to finance the repairs which he alleges were of the cost of $2,600.00.

The above papers were delivered to the title company by appellant. It appears that a Mr. Sicala had procured another party to lend appellant $3,000.00 and the note and deed of trust executed by appellees were assigned by appellant as collateral security for the loan to him. Such party, as shown by the record, has agreed to appellant's pursuing his suit. Out of this $3,000.00, the title company made distribution. Mr. Sicala received $597.80 as a commission of some kind and a brokerage fee of $200.00 for getting the loan for Stone. Stone received $1,000.00 and Lewis and Inkley received $1,041.91. Some small amounts went for taxes and closing costs. Stone's $1,000.00 purportedly represented money he still owed on the repairs of $2,600.00 he says he made.

On January 11, 1958, Mr. Lewis executed a deed to appellees conveying the above numbered lots in Block 12, Blossom Heights, Section 2. For the first time the property is described as being in *Section 2*. The mechanic's lien, the contract for deed, and the deed of trust had shown only that the lots were in Block 12, Blossom Heights, a subdivision in the E. P. Whitehead Survey in Harris County. This distribution of $3,000.00 plus $1,600.00 Stone says he otherwise paid for re-

pairs amounts to $4,600.00 only though the note was for $6,000.00 with interest at the rate of 8% per annum.

Thereafter appellant refused to pay any money to James and James made no payment on the note. We should add that just before Christmas Stone gave James $200.00, Stone saying it was to help James save some furniture from foreclosure. Stone declared the note due and requested the trustee to sell the property.

On March 10, 1958, the trustee posted notices, describing the property at the described lots in Block 12 of Blossom Heights, Section 2, though the deed of trust described it as being in Blossom Heights. The notice stated the sale would be held on the first Tuesday in April. On April 1, 1958, the trustee executed a deed reciting the sale was held March 10, 1958, and described the property as being in Blossom Heights, and not in Section 2. The deed was to appellant. On January 8, 1960, the trustee executed a correction deed reciting the trustee's sale was held April 1, 1958 and describing the property as being in Blossom Heights, Section 2. The evidence showed Blossom Heights and Blossom Heights, Section 2, are adjoining subdivisions. They were platted about a year apart. There is no Block 12 in Blossom Heights.

The case was submitted to the jury on seven special issues. Special Issue No. 1 inquired as to the reasonable value of the repairs made and the jury answered $1,000.00. The other issues inquired as to whether at the time the note and mechanic's lien were executed on December 21, 1957, and at the time the note and deed of trust were executed January 8, 1958, appellant represented to appellees, James and Ruth Williams, he would procure a $6,000.00 loan on the property, and out of it pay appellees $3,000.00 and pay Inkley and Lewis and the costs of repair; whether said appellees relied thereon; and whether at the time appellant did not intend to pay appellees $3,000.00.

The jury, understandably and upon what we deem sufficient evidence answered all issues in the affirmative.

Before the case was submitted the appellant moved for an instructed verdict on the ground that appellees were seeking to impeach or set aside the trustee's deed after foreclosure. The motion was denied.

Appellant excepted to the submission of each issue on the ground that there was no evidence to support its submission. He also excepted to submission of any issue on the same basis as urged in his motion for instructed verdict. Appellant made no request for the submission of any special issues.

The trial court, upon motion of appellees, disregarded the answer to Special Issue No. 1 because immaterial in the light of the jury's answers to the other issues, which in effect found appellant guilty of fraud that tainted the whole transaction, and entered judgment favorably to appellees.

The evidence as to the representations of appellant that he would get a loan of $6,000.00 and pay Inkley and Lewis, pay for the repairs, and pay appellees $3,000.00, was properly admitted and is sufficient to support the jury's verdict and the court's judgment. The evidence is not admitted in such a case to vary, add to or contradict the terms of the instruments attacked, but for the purpose of showing because of fraud no legal instrument exists. McCormick and Ray, Texas Law of Evidence, second ed., Sec. 1661; Rapid Transit Ry. Co. v. Smith, 98 Tex. 553, 86 S.W. 322; Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873; Texas & Pacific Ry. Co. v. Presley, 137 Tex. 232, 152 S.W.2d 1105.

When the evidence is admitted and other evidence shows the representations to be false and that the complaining party relied on them to his damage, fraud is established that avoids the instrument

sued upon. Where, as here, the representation is a promise to do something in the future and there exists at the time of the representation an intention not to perform, there is the representation of an existing fact. While a mere failure to perform is not sufficient to prove the existence of an intention not to perform at the time the promise is made, where the party allegedly making the promise denies making the promise, there is sufficient evidence to support a finding that there was the absence of intention to perform when it was made. Texas & N. O. Ry. Co. v. Thompson, 1 S.W.2d 938, C.C.A., aff'd 12 S.W.2d 963, Com.App.

In the case before us appellant denied making the promise. This is sufficient, together with refusal to perform, to support the finding that at the time the promise was made appellant did not intend to perform.

■ The trustee's deed of January, 1960, furnishes appellant no support. At the time of the trustee's sale in 1958, he was acting under a deed of trust that conveyed lots in Blossom Heights and not in Blossom Heights, Section 2. Appellant must, therefore, rely on the description as contained in the deed of trust of the E. ½ of Lot 12 and all of Lot 13, Block 12, Blossom Heights, as being sufficient to convey lots of the same description in Blossom Heights, Section 2. We deem such description to be insufficient under the holding of Texas Osage Cooperative Royalty Pool v. Colwell, 205 S.W.2d 93, C.C.A., ref., n. r. e. The result is that there has never been a legal foreclosure on the lots in Blossom Heights, Section 2. The mechanic's lien and deed of trust describe lots in Blossom Heights. Appellant did not ask for the submission of any issue on reformation nor move for judgment on such theory and he has thus waived any cause he might have had. Rule 279, Texas Rules of Civil Procedure. Too, even if reformation of the deed of trust and mechanic's lien had been granted as to description, appellant would not have been entitled to foreclosure because the jury's finding of fraud required a judgment avoiding them and the $6,000.00 note which they were given to secure.

Appellant urges that in any event he would be entitled to be subrogated to the rights of Inkley and Lewis to the extent of $1,041.91 and they had a vendor's lien. Too, he says, he would be subrogated to the lien of the taxing authorities to the extent of some small amount of taxes he paid. As for the taxes, it is to be answered that they were not sued for.

■ While, in a case where no fraud is involved, the person who at the request of the debtor pays the creditor will be subrogated to the lien of the creditor, where fraud permeates the transaction such person can claim no rights from any part of the transaction tainted by the fraud. Huey v. Brand, Tex.Civ.App., 92 S.W.2d 505, aff'd Borger v. Brand, 131 Tex. 614, 118 S.W.2d 303; Chambers v. Wyatt, 151 S.W. 864, C.C.A., no writ hist.

Here any rights in appellant came to him as a result of the same transaction. The appellees, at the time appellant put in his appearance and made the false representations as found by the jury, were obligated to pay $13.00 per month and were current in their payments. They did not ask appellant to make the payment, though it is true they supposed he would since he promised to do so. Yet appellant's asserted right to subrogation is based on the transaction that was brought about by the fraudulent scheme of appellant. His fraud permeated the whole transaction. Appellant says appellees are unjustly enriched. Appellees offered to convey the property if appellant would pay the $3,000.00 he promised. He refused the offer.

The judgment of the trial court is affirmed.

COLEMAN, J., not sitting.