U. S. ENTERPRISES, INC., Petitioner,

v.

Dean I. DAULEY et al., Respondents.

No. B–5436.

Supreme Court of Texas.

March 31, 1976.

Sears, Parker, Quisenberry & Spurlock, Dean Spurlock, Fort Worth, for petitioner.

Thorne, Thorne & Robertson, Inc., Michael A. Robertson, Grand Prairie, for respondents.

DANIEL, Justice.

This is an appeal from a summary judgment holding that under the Statute of Frauds a written purchase contract purporting to cover 600 acres of land in three specifically named surveys in Wise County did not sufficiently describe two tracts in a fourth and different survey.

Petitioner, U. S. Enterprises, sued Coke L. Gage and wife for specific performance of a contract to sell approximately 600 acres of land in the J. G. Bullock, David Moses and J. H. Moore Surveys of Wise County, for approximately $750,000. The contract was dated July 17, 1972, and this suit was filed on May 24, 1973. The Gages denied the validity of the contract, asserting among other defenses that after they had signed the contract, and without their consent, U. S. Enterprises inserted therein the sum of $2,000 instead of an agreed minimum of $25,000 as earnest money; that the agreed minimum earnest money was not paid; and that the contract was unenforceable as to any lands because the descriptions therein were so uncertain, incomplete and indefinite that they violate the Statute of Frauds.[1] While that suit was pending, on July 13, 1973, the Gages sold 30.621 acres in the A. J. Walker Survey of Wise County to Dauley Enterprises. The tract, hereinafter referred to as 30 acres, was described in the Dauley deed as a single tract with metes and bounds which indicate that it is triangular in shape, bounded on the south by the north line of Thompson Street in the City of Decatur, on the northeast by U. S. Highway 287, and on the west by F. M. Road 51.

U. S. Enterprises, claiming that the 30 acres was part of the land described in its contract with the Gages, interpleaded Dauley Enterprises, Dean I. Dauley, and others (hereinafter referred to as Dauley), in its suit against the Gages and sought to set aside the Dauley deed. The trial court granted summary judgment for Dauley on the ground that the contract between U. S. Enterprises and the Gages did not as a matter of law adequately describe any property sold by the Gages to Dauley. Thereafter, the trial court ordered a severance of U. S. Enterprises' cause of action against Dauley from the remainder of the main suit and entered a final judgment thereon. U. S. Enterprises appealed from the summary judgment in favor of Dauley but not from the order of severance. The court of civil appeals affirmed. 524 S.W.2d 339. We affirm.

On an appeal from a summary judgment, the facts established by the summary judgment proof must be construed in the light most favorable to the non-movant. *Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company*, 391 S.W.2d 41 (Tex.1965). When so viewed, principally from the affidavit of Frank E. Snell, president of U. S. Enterprises, it appears that Snell and Gage drove by the ten parcels of land to be included in their proposed purchase contract in 1972; that tract 9, being listed as 26 acres, more or less, known as the Harvey Burress property, and tract 10, listed as 6 acres, more or less, known as the Decatur Baptist College property, were represented as being located within the 30 acre triangle later purchased by Dauley; that specific legal descriptions were not available when the contract was signed, but a map prepared by a U. S. Enterprises employee was attached as Exhibit A, with various sections thereon colored to indicate property included in the contract; that before the contract was signed, Snell and Gage "discussed and went over the map . . . for the purpose of being certain which property was covered . . . and it was specifically understood that the triangular piece of property bordered on the northeast side by U. S. Highway 287, on the west side by State Farm to Market Road 51, and on the south by West Thompson, was a portion of the property

---

1. Sec. 26.01, Business and Commerce Code, Vernon's Texas Codes Annotated, the Statute of Frauds; formerly Article 3995.

included in the contract."[2] On July 12, 1973, the day before Dauley completed his purchase of the triangle from Gage, Snell talked with Dauley by telephone and advised him that the property was claimed by him to be included in the U. S. Enterprises-Gage contract and was subject to the pending litigation and a lis pendens notice on file in Wise County. Although the latter had no reference to or copy of the colored map, Exhibit A, and the copy attached to Plaintiff's Original Petition was without coloring, Dauley had actual notice that U. S. Enterprises was claiming to have a purchase contract on the triangle before he purchased it from the Gages. Thus we do not have before us the question of the rights of an innocent purchaser. As to the validity or invalidity of the description in the U. S. Enterprises-Gage contract, Dauley occupied the same position as the Gages insofar as the land in the triangle was concerned.

### Question on Summary Judgment

In his motion for summary judgment, Dauley contended that neither the U. S. Enterprises-Gage contract, the pending lawsuit, nor the lis pendens described the 30 acres which Dauley purchased from the Gages. That also was the Gages' contention in their pleading of inadequate description under the Statute of Frauds, which was the only defense of the Gages that was available to Dauley on his motion for summary judgment. The sole question, presented, therefore, is whether the summary judgment proof established as a matter of law that the written descriptions of tract 9 and tract 10 in the U. S. Enterprises-Gage contract (including the map) were insufficient under the Statute of Frauds to locate such tracts with reasonable certainty as comprising the triangle in the A. J. Walker Survey. The sufficiency of the description of the remainder of the 600 acres in the U. S. Enterprises-Gage contract is not before us. The relevant provisions of the contract are as follows:

That we, Coke L. Gage and wife, Donnie Gage (hereinafter called Seller, whether one or more) hereby sell and agree to convey to U. S. Enterprises, Inc., or its nominee (hereinafter called Purchaser), and Purchaser hereby buys and agrees to pay for 600 acres of land, more or less, out of the J. G. Bullock Survey, Abstract No. 79, the David Moses Survey, Abstract No. 537, and the J. H. Moore Survey, Abstract No. 538, in Wise County, Texas, being generally described in ten (10) tracts as follows:

(1) 115.012 acres known as the Foster Estate property;

(2) 157.483 acres known as the Burress property;

(3) 193.97 acres known as the McDermitt property;

(4) 26.92 acres known as the Brown property;

(5) 21 acres, more or less, known as the Annie Mae Stevens property;

(6) 15 acres, more or less, known as the Elmer Wallace property;

(7) 32.34 acres, known as the Stevens property;

(8) 18.57 acres known as the Wallace property;

(9) 26 acres, more or less, known as the Harvey Burress property; and

(10) 6 acres, more or less, known as the Decatur Baptist College property;

Said property marked on Exhibit "A" attached hereto and colored in green with the Bullock property colored in orange. Said contract includes all of the land owned in said surveys above described exclusive of the 200 acres in the J. H. Moore Survey described in Paragraph 15 hereof. It is understood that said lands are to be conveyed by accurate ground survey prepared by registered public surveyor or surveyors which said survey shall be furnished at Seller's expense prior to closing.

Below is a copy of the relevant portion of the map attached to the contract as Exhibit

---

**2.** Quotations are from the affidavit of Frank E. Snell, President of U. S. Enterprises. Portions of this statement are confirmed by the deposition of Coke L. Gage.

A. The Transcript reveals no coloring on any of the copies attached to the four pleadings filed by U. S. Enterprises in the trial court. The only copy in the record with the coloring reproduced as on the original contract is the copy attached to the affidavit of Frank E. Snell. We have drawn diagonal lines to denote the areas which were colored on the Snell copy, all being in green except the C. L. Gage 163.5 acres, which was in orange.

*Test of Sufficiency of the Description*

Both parties agree that the 30 acres in question purchased by Dauley from the Gages lies in the A. J. Walker Survey, Abstract No. 860. Dauley prevailed in the lower courts on undisputed proof of this fact and that the written portion of the contract between U. S. Enterprises and the Gages did not list or refer to any of the property as being in the A. J. Walker Survey. The typed description on the first page of the U. S. Enterprises-Gage contract specifically refers to "600 acres of land, more or less, out of the J. G. Bullock Survey, Abstract No. 79, the David Moses Survey, Abstract No. 537, and the J. H. Moore Survey, Abstract No. 538, in Wise County, Texas, being more generally described in ten (10) tracts as follows:" Following the list of tracts and the reference to "said property" being marked on Exhibit A, is another general descriptive statement restricted to the named surveys. It reads: "Said contract includes all of the land owned in said surveys above described exclusive of the 200 acres in the J. H. Moore Survey described in Paragraph 15 hereof." There is no mention whatever of the A. J. Walker Survey either in the typed portion of the contract or on the attached map marked Exhibit A.

U. S. Enterprises counters with the argument that the green colored triangular area on the right-hand side of Exhibit A is in the A. J. Walker Survey and that omission of the name of the survey is not fatal because tracts 9 and 10 can both be located within that triangle through aid of the map. The question is whether that is possible from the means or data furnished within the

contract, including Exhibit A, without resorting to impermissible parol evidence. In that connection, neither the face of the written contract nor the map contain any words, names, numerals, or other writing indicating that the triangle is in the A. J. Walker Survey or that tracts 9 and 10 are located within all or part of the triangle. We are supplied with these asserted elements of location from extrinsic evidence, primarily the affidavit of Frank E. Snell, who stated that such was the understanding of the parties when they negotiated and signed the contract. This brings us back to the question of whether the summary judgment proof established as a matter of law that the written descriptions of tracts 9 and 10 in the contract (and map) were insufficient under the Statute of Frauds to permit identity of location by extrinsic evidence.

■ The rule to be applied in determining the sufficiency of a description of land in an action for specific performance has been stated many times by this Court. Apparently the most generally cited statement of the rule since 1945 was written by this Court in *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150 (1945), as follows:

"In the absence of equities removing the case from the operation of the statute of frauds, which do not here exist, it is well settled that before a court will decree the specific performance of a contract for the sale of land, or entertain a suit for damages for the breach thereof, the written agreement or memorandum required by the statute must contain the essential terms of a contract, expressed with such certainty and clarity that it may be understood without recourse to parol evidence to show the intention of the parties; and no part of the instrument is more essential than that which identifies the subject matter of the agreement. *Jones v. Carver*, 59 Tex. 293, 295.

"In so far as the description of the property is concerned the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *Morrison v. Dailey*, Tex. Sup., 6 S.W. 426; *Osborne v. Moore*, 112 Tex. 361, 247 S.W. 498."

In the *Wilson* case, specific performance was denied because of an insufficient description. The most detailed of two memoranda described the property as "a brick duplex and garage apt, located at 4328–30 Cedar Springs [Road] . . . 'Room at back not included.'" Among other reasons for declaring the description insufficient, the Court said "[t]he ownership of the property is left in conjecture, and where the identity of the property is doubtful, ownership becomes an important element. . . It is not a necessary inference that Mrs. Fisher owned the property simply because she contracted to sell it." No lot or block was given. The Court continued: "Although reference is made to '4328–4330 Cedar Springs Road,' the location of such road or street rests entirely in parol. In fact every essential element of the description is left to inference or to be supplied by parol. Such description is palpably insufficient to support a suit either for specific performance or for damages."

One of the more recent statements of the rule by this Court was in *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.1972). There, as here, the intention of the parties was clear, but it was not adequately expressed in the contract. Specific performance to convey a 12 acre triangular tract in the northwest corner of the Jefferson McGrew Survey was denied. It was described as lying north of a line running from the northeast corner of a specific 100 acre tract east to a point in the west boundary line of Highway No. 277. We held that the contract contained no means or data in the description to tell the northerly course or distance to run after intersecting the west boundary of Highway 277, and that neither course nor distance was given for the north and west lines. In refusing to permit extrinsic evidence to supply the highway and other boundaries intended by the parties, the Court said:

"The record leaves little doubt that the parties knew and understood what prop-

erty was intended to be conveyed as Second Tract. Moreover, a surveyor, by a search of abstract records and on directions given by an attorney, located the property on the ground and made a plat which was introduced in evidence and shows its location and boundaries. However, the knowledge and intent of the parties will not give validity to the contract, *Rowson v. Rowson*, 154 Tex. 216, 275 S.W.2d 468, 470 (1955); and neither will a plat made from extrinsic evidence. *Matney v. Odom*, 147 Tex. 26, 210 S.W.2d 980, 984 (1948). The correct rule relating to admissibility of parol evidence to aid descriptions in contracts for the conveyance of land is thus stated in *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150, 152 (1945):

" 'The certainty of the contract may be aided by parol only with certain limitations. The essential elements may never be supplied by parol. The details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol. But the parol must not constitute the framework or skeleton of the agreement. That must be contained in the writing. *Thus, resort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum. O'Herin v. Neal*, Tex.Civ. App., 56 S.W.2d 1105, writ refused.' (Emphasis ours.)"

### Reliance Upon the Attached Map

U. S. Enterprises does not contend that the description in its written contract (without aid of the map) contains in itself the means or date by which tracts 9 and 10 can be located with reasonable certainty. Obviously, the written portion of the contract is limited to ten tracts located in the three named surveys, and nothing therein or upon the map indicates which of the ten tracts are within the colored triangle. Descriptions without boundary lines, beginning points, or other means by which the acreage can be located have often been held to be insufficient to meet the Statute of Frauds. *Morrow v. Shotwell, supra*; *Matney v. Odom*, 147 Tex. 26, 210 S.W.2d 980 (1948); *Greer v. Greer*, 144 Tex. 528, 191 S.W.2d 848 (1946); *Smith v. Sorelle*, 126 Tex. 353, 87 S.W.2d 703 (1935); *Pfeiffer v. Lindsay*, 66 Tex. 123, 1 S.W. 264 (1886). Exceptions not applicable here are discussed in *Wilson v. Fisher, supra*, 188 S.W.2d at 153; *Holloway's Unknown Heirs v. Whatley*, 133 Tex. 608, 131 S.W.2d 89 (1939); *Smith v. Westall*, 76 Tex. 509, 13 S.W. 540 (1890), and *Texas Consolidated Oils v. Bartels*, 270 S.W.2d 708 (Tex.Civ.App.1954, writ ref'd).

U. S. Enterprises relied upon the attached map as curing the omission of the name of the survey and as furnishing a descriptive means by which tracts 9 and 10 could be located. An attached map becomes a part of the written contract and can aid a defective written description if the map contains enough necessary descriptive information. See for instance *Pritchard v. Burnside*, 140 Tex. 212, 167 S.W.2d 159 (1943), where missing calls and distances were supplied from a partition map referred to in the deed, and *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W.2d 977 (1941), where a missing first call in a written lease was supplied by an attached map which had all of the course and distance calls of the tract clearly set forth along the boundary lines. Whether a map is helpful in remedying descriptive defects of the contract depends on whether the missing details are shown on the map. See the *Lewis* map, 146 S.W.2d at 979, and compare with the map in this case.

The map attached to the U. S. Enterprises-Gage contract has nothing written, printed or colored on it which supplies any aid as to the name or location of the Walker survey or the numbered tracts of the contract claimed to be within the triangle of the Walker Survey. The green shaded triangle has no identifying name or number on it which corresponds with one or more of the ten tracts listed in the written contract. Its size is not indicated on the map. It shows no course or distance calls along its lines. Even if the contract had

been reformed to include the A. J. Walker Survey, would there be enough means or data in the contract or on the map to locate one or more of the ten listed tracts as comprising the triangle in the Walker Survey? We think not. Surely, the shaded portion of a map which does not refer to the disputed property in any other way would not amount to a sufficient description of two separate tracts of land which neither the contract nor any writing on the map show to be encompassed therein. By extrinsic evidence, U. S. Enterprises sought to show that tracts 9 and 10 are located in the shaded triangle. Even if such proof were permissible by parol evidence, it still does not indicate in what portion of the triangle tract 9 lies. Neither does it give any location of tract 10. Does tract 9 lie on the north or south, or in the east or west side of the triangle? What lines of the triangle form one or more of the lines of tract 9 and tract 10? None of these answers on essential locative means and data can be found in the contract or on the map. Not a single beginning point or line of either tract 9 or 10 is furnished. We held in *Morrow v. Shotwell, supra,* that the description was defective because course and distance of the east line along the highway and courses and distances of the west and north lines were not stated in the written contract. Here the location, course and distance of no line of tract 9 and no line of tract 10 is written either in the contract or on the map. It would do violence to the Statute of Frauds to permit extrinsic evidence to furnish these essential descriptive elements.

This Court had the same situation in a specific performance contract in *Matney v. Odom,* 147 Tex. 26, 210 S.W.2d 980 (1948), "when the shapes respectively of the two pieces of land" and the course and distances of their boundary lines were not stated in the contract. The description was "four (4) acres out of the East end of a ten-acre block on the P. Chireno Survey . . . Smith County, Texas, located on the North side of the Kilgore highway." The Court said the description "contain[ed] nothing indicating the shape of the block [ten acres]

or the courses and lengths of its border lines or those of the four acres." It was contended that the identity of the land was clear in the minds of the parties and on a plat prepared subsequent to the contract, and that the land could thus be located with certainty by extrinsic evidence. In holding that such a "resort to oral evidence . . . would be passing title to land by parol 'in violation of the statute,'" and would thus expose the contract "to all the evils which the statute was intended to remedy," the Court said:

> ". . . The reasons why the plat and parol evidence are not admissible are clearly and succinctly expressed in Jones, Cyclopedia of Real Property Law, Vol. 1, p. 329 as follows: 'Since the description, or the key thereto, must be found in the language of the contract, the whole purpose of the statute of frauds would be frustrated if parol proof were admissible to supply a description of land which the parties have omitted from their writing. . . .'"

### The Effect of Naming Specific Surveys

U. S. Enterprises argues that the omission of the name of the Walker Survey is not fatal to the description. In fact, it contends that the identification of land by surveys is becoming of less importance in conveyancing and land descriptions. We disagree. Throughout the history of land law in Texas, our cases have stressed the importance of identifying land as being within a certain league, labor, or survey. The practice is still an important aid to abstractors, title examiners, and tax assessor-collectors who maintain their plat books and other records under the names of leagues, surveys, and city block numbers. We recognize that the rule has its exceptions. Under certain circumstances descriptions have been upheld without the naming of a specific survey. See *Morrison v. Dailey,* 6 S.W. 426 (Tex.1887); *Fulton v. Robinson,* 55 Tex. 401 (1881); *Eldredge v. Godwin,* 263 S.W.2d 598 (Tex.Civ.App.1953, writ ref'd n. r. e.); *Sorsby v. Thom,* 122 S.W.2d 275 (Tex.Civ.App.1938, writ dism'd); *Dyer v. Winston,* 33 Tex.Civ.App. 412, 77

S.W. 227 (no writ), and *Hinkle v. Hays*, 162 S.W. 435 (Tex.Civ.App.1913, no writ); Lange, 5 *Texas Practice, Land Titles*, § 771, 182–188. Compare *Phillips v. Burns*, 151 Tex. 614, 252 S.W.2d 927 (1952).

■ The description in this case, however, is not without a specifically named survey. Rather, the contract names three specific surveys, thus restricting the property actually covered by the contract to the surveys named. It should be remembered that no reformation was sought by U.S. Enterprises to correct any mutual mistake as to the names of the surveys or other descriptive deficiencies. Thus, throughout this case we are in the position of interpreting the effect of what the parties expressed in their written contract (and attached map) rather than what they may have intended to express. See *Strong v. Garrett*, 148 Tex. 265, 224 S.W.2d 471 (1949); *Davis v. George*, 104 Tex. 106, 134 S.W. 326 (1911); *Stone v. Williams*, 358 S.W.2d 151 (Tex.Civ.App.1962, writ ref'd n. r. e.), and *Texas Osage Cooperative Royalty Pool v. Colwell*, 205 S.W.2d 93 (Tex.Civ.App.1947, writ ref'd n. r. e.).

In *Gage v. Owen*, 435 S.W.2d 559 (Tex. Civ.App.1968, writ ref'd n. r. e.), it was claimed that a deed to "our undivided interest in the estate of B. B. Ball, deceased, out of the William Marlett Survey" was enlarged to cover other lands by a phrase "being the same land conveyed to B. B. Ball by W. P. Kennedy . . . by deed recorded in Vol. 69, page 59, Montague County, Deed Records." The Court treated the phrase "out of the William Marlett survey" as a restriction on the description of the property conveyed by the first tract described in the deed since it was the only survey mentioned therein. The second tract was described as "The southwest quarter of the W. R. Powell Survey," when the grantors actually owned no interest in that quarter of the survey but did own and intended to convey the northeast quarter of the survey. The Court held that since limitations had run on reformation "the deed must be considered as written." The court added:

"It is not the unexpressed intention which the parties may have had concerning the subject matter of their transaction which is of controlling effect, but rather the intention which by said instrument they did express. The real intention is immaterial if not expressed."

A similar holding was made in *Gore v. Cunningham*, 297 S.W.2d 287 (Tex.Civ.App. 1956, writ ref'd n. r. e.), in which 147 acres in the O. C. Nelson League in Hardin County was described as being in the adjoining G. W. Brooks League in a deed to W. J. Gore in 1871. Gore went into possession of the property in the Nelson League and lived on it long enough to acquire limitation title, conveying the land in 1896 to Jesse Moss as 147 acres in the G. W. Brooks League, with the same description as in Gore's 1871 deed. The Court held that these deeds did not convey the land in controversy in the O. C. Nelson League "because they did not in fact describe or mention the land in the Nelson League." In that case the court of civil appeals refused to accept stipulations and admissions of the parties contrary to its holding as a matter of law that no property in the Nelson League passed under a description calling for the G. W. Brooks League. See also *Minor v. Powers*, 87 Tex. 83, 26 S.W. 1071 (1894), and *Scheller v. Groesbeck*, 231 S.W. 1092 (Tex.Com.App. 1921, judgt adopted).[3]

■ Although the repugnancy between the expressed and unexpressed intent in most of the above cases was attempted to be shown by extrinsic evidence, the holdings are in accord with the general rule applicable to inconsistencies which appeal within a written instrument relating to land. All parts of a written instrument

---

**3.** Compare the following cases in which mistakes in the name of the survey were held not to be fatal when there was other descriptive language from which the correct survey was evident: *Gates v. Asher*, 154 Tex. 538, 280 S.W.2d 247 (1955) ("Denver Resurvey No. 2" instead of "Denver Resurvey"); *Burchard v. Record*, 17 S.W. 241 (Tex.1891) ("J. P. Digg's" instead of "Geo. P. Digg's" Survey); and *Petty v. Wilkins*, 190 S.W. 531 (Tex.Civ.App.1916, writ ref.) ("Joseph Stone Survey" instead of "Joseph Sloan Survey").

must be harmonized and given effect if possible, but in case of a conflict the more specific provisions will control over general expressions which are worded as being applicable to the same land. See *Cullers v. Platt*, 81 Tex. 258, 16 S.W. 1003 (1891); *Scheller v. Groesbeck*, 231 S.W. 1092 (Tex. Com.App.1921, judgt adopted); Lange, 5 *Texas Practice, Land Titles* § 776, 211–218.

### Conclusion

■ In the U. S. Enterprises-Gage contract there are three rather general descriptions, including the map, all of which are said in the written contract to apply to the ten listed tracts of approximately 600 acres of land in the Bullock, Moses and Moore Surveys of Wise County. The only repugnancy is that the map, recited as marking "said property," includes a green shaded triangle which is shown by extrinsic evidence to be in the A. J. Walker Survey. We hold that this shaded area, being inconsistent with all of the other descriptive calls, cannot prevail over the specifically named surveys so as to include land in an unnamed survey.

Even if the Walker Survey had been named in the written contract or on the attached map, the shaded triangle which does not refer to the disputed property in any other manner is not within itself a sufficient description of the land in question. It does not supply the means or data by which tracts 9 and 10 may be reasonably located without resort to extrinsic evidence prohibited by the Statute of Frauds.

We hold that the summary judgment proof shows as a matter of law that the U. S. Enterprises-Gage contract of July 17, 1972, did not sufficiently describe the 30 acres in question to sustain a judgment for specific performance against the Gages as to that particular tract, and that the trial court properly granted summary judgment for Dauley.

Accordingly, the judgments of the courts below are affirmed.

DOUGHTY, J., dissents, and POPE, REAVLEY and McGEE, JJ., join.

DOUGHTY, Justice (dissenting).

I respectfully dissent.

The sole question before the Court in this case is whether the trial court correctly held that the description of a certain tract of land in a contract for its sale does not meet the requirements of Tex.Bus. & Comm.Code Ann. § 26.01 (1968), the Statute of Frauds, as a matter of law. The description in question is part of a contract by which Coke L. Gage agreed to sell certain property in Wise County to U. S. Enterprises, Inc. U. S. Enterprises has sued Gage for specific performance of this contract. The proof submitted on summary judgment, construed in the light most favorable to U. S. Enterprises, the non-movant for summary judgment, reveals the following: while U. S. Enterprises' suit against Gage was pending, Frank E. Snell, the president of U. S. Enterprises, learned that Dean I. Dauley was negotiating with Gage for the purchase of a tract of land of approximately thirty acres in Wise County, which tract Gage had agreed to sell to U. S. Enterprises under the contract in litigation. The day before Gage deeded this thirty-acre tract to Dauley, Snell informed Dauley by phone that he was claiming that the property was included in his contract with Gage. After Snell learned that Gage and Dauley had consummated their sale, he joined Dauley in his suit against Gage, seeking to set aside the sale. Dauley moved for summary judgment, contending that the U. S. Enterprises-Gage contract was unenforceable as to the thirty acres because it did not comply with the Statute of Frauds' requirement that the property be described in the contract with reasonable certainty. The trial court granted Dauley's motion for summary judgment, and, after a severance, U. S. Enterprises has appealed that ruling.

The relevant provisions of the U. S. Enterprises-Gage contract are as follows:

That we, Coke L. Gage and wife, Donnie Gage (hereinafter called Seller, whether one or more) hereby sell and agree to convey to U. S. Enterprises, Inc., or its nominee (hereinafter called Pur-

chaser), and Purchaser hereby buys and agrees to pay for 600 acres of land, more or less, out of the J. G. Bullock Survey, Abstract No. 79, the David Moses Survey, Abstract No. 537, and the J. H. Moore Survey, Abstract No. 538 in Wise County, Texas, being generally described in ten (10) tracts as follows:

(1) 115.012 acres known as the Foster Estate property;

(2) 157.483 acres known as the Burress property;

(3) 193.97 acres known as the McDermitt property;

(4) 26.92 acres known as the Brown property;

(5) 21 acres, more or less, known as the Annie Mae Stevens property;

(6) 15 acres, more or less, known as the Elmer Wallace property;

(7) 32.34 acres, known as the Stevens property;

(8) 18.57 acres known as the Wallace property;

(9) 26 acres, more or less, known as the Harvey Burress property; and

(10) 6 acres, more or less, known as the Decatur Baptist College property;

Said property marked on Exhibit "A" attached hereto and colored in green with the Bullock property colored in orange. Said contract includes all of the land owned in said surveys above described exclusive of the 200 acres in the J. H. Moore Survey described in Paragraph 15 hereof. It is understood that said lands are to be conveyed by accurate ground survey prepared by registered public surveyor or surveyors which said survey shall be furnished at Seller's expense prior to closing.

Exhibit A, attached to the contract, was a sketch of the property to be conveyed. Below is the relevant portion of that sketch, with the parts which were colored in the original sketch designated by diagonal lines (the tract labeled "163.5 C. L. Gage" was colored in orange, the rest green):

The tract which Dauley purchased from Gage is all that property lying within the triangle created by the intersection of Highway 287 and 81, Highway 51 and West Thompson. This tract is visible on the right-hand portion of the sketch reproduced above. It is uncontested that U. S. Enterprises and Gage intended to include this triangle as part of the property to be conveyed under their contract of sale. Frank Snell states in his affidavit in opposition to Dauley's motion for summary judgment that this triangle encompasses the last two tracts described in the written portion of the contract: "(9) 26 acres, more or less, known as the Harvey Burress property," and "(10) 6 acres, more or less, known as the Decatur Baptist College Property." There is no evidence to the contrary in the summary judgment proof. Both parties agree that this triangle lies in the A. J. Walker Survey, which is not mentioned in the contract.

The issue to be decided is whether the summary judgment proof establishes as a matter of law that the description of the triangular tract in the U. S. Enterprises-

Gage contract does not comply with the Statute of Frauds' requirement that all contracts for the sale of land be in writing. We are not asked to decide whether the U. S. Enterprises-Gage contract must fail in its entirety because of any insufficiency in the description of other property included in the contract. We must assume, therefore, that the contract can be enforced as to any part of the property intended to be conveyed whose description is sufficient, even though the description of other property may be insufficient to locate it with reasonable certainty. Nor must we decide whether the description of the thirty acres is in fact sufficient under the Statute of Frauds. There may be reasons to find the description insufficient which are not revealed by the summary judgment proof. The only issue before us is whether the summary judgment proof establishes that the description of the thirty-acre tract is insufficient as a matter of law. If not, then the trial court's summary judgment for Dauley was erroneous.

The majority opinion correctly cites the rule for testing the sufficiency of a description of land in a contract of sale, but in my opinion the majority fail to correctly apply this rule to the contract before us. The majority have lost sight of the fundamental purpose of the Statute of Frauds, and as a result a rule whose purpose is to prevent fraud has been applied to thwart the expressed intent of the parties to the contract. The Statute of Frauds simply requires that all contracts for the sale of land be in writing. This requirement has long been interpreted to mean that the contract must furnish enough information to locate the property to be conveyed with reasonable certainty. As stated by this Court in *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150, 152 (1945), "the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty." The test to be applied to the description in the U. S. Enterprises-Gage contract, therefore, is whether it supplies the essential elements necessary to locate the thirty acres in question; or, in other words, whether the contract supplies "the means or data" from which a party familiar with the locality could locate the thirty acres with reasonable certainty.

What data does the contract supply? First, that the property to be conveyed lies within three surveys, J. G. Bullock, David Moses, and J. H. Moore, in Wise County; second, that the property consists of ten tracts, each given an approximate acreage and a name; and third, that it is the property colored in green and orange on a sketch which is attached to and made a part of the contract. Obviously, the most specific data provided by the contract is that found on the sketch itself. Using the sketch alone, it is apparent that the exact boundaries of at least one portion of the land colored thereon can be readily located, without reference to any additional or extrinsic information: that is, all the property lying within the triangle created by three roads which are named on the sketch, West Thompson on the south, Highway 287 and 81 on the west, and Highway 51 on the east. Indeed, there can be no other location in the State of Texas, so far as the summary judgment proof shows, where these named roads converge to create such a triangle. Even without the name of the survey or county in which this land lies, it is clear that any person given this sketch could locate that property and its boundaries with reasonable certainty. The named roads provide ready-made distance and course lines which can be located on the ground without reference to any other information. In fact, looking at the sketch, it is apparent that this triangle is the only tract of land whose boundaries are clearly located by lines which are visible on the ground. It is this same triangle which Dauley Enterprises has purchased from Gage.

The majority of the Court have held, nevertheless, that the description in the contract is insufficient to comply with the Statute of Frauds. A primary reason given by the majority for its holding is that the contract failed to name the Walker Survey, within which this triangle lies. Although

the reasoning of the opinion is not clear, it is apparently asserted that, because of the omission of the Walker Survey from the contract description, it is impossible to determine from the face of the contract whether the parties intended to include the triangular tract within its terms—i.e., whether the parties intended to convey all the property colored on the sketch, or only that property on the sketch which is located within the three surveys named in the contract. Although this inconsistency does create an ambiguity, I respectfully disagree with the majority's conclusion that the inconsistency is necessarily fatal to the description.

First, despite the majority's strong reliance on survey names, it is clear that the failure to name a survey is not fatal to a description if the property can be located from the data in the contract without reference to a survey. See *Easterling v. Simmons*, 293 S.W. 690 (Tex.Civ.App.—Waco 1927, writ ref'd). When the sketch is applied to the ground, it is revealed that the triangle lies in the Walker Survey, which is adjacent to, and to the east of, the Bullock Survey. Thus, it is clear that some part of the description is erroneous—either the assertion that the property all lies in the Moses, Bullock and Moore Surveys, or the inclusion of the triangle within the colored portion of the map. A false or contradictory element in a description does not necessarily make it insufficient, however. The description will be upheld, and the contradiction will be harmless, if one can still determine the intention of the parties with reasonable certainty from the data supplied by the contract. *Roberts v. County of Robertson*, 48 S.W.2d 737 (Tex.Civ.App.—Waco 1932, writ ref'd); *Wilemon v. State*, 385 S.W.2d 573 (Tex.Civ.App.—Dallas 1964), reversed on other grounds 393 S.W.2d 816 (Tex.1965).

In determining the parties' intent where there is some conflict in the data of description, it is a well known rule of construction that specific language of description controls more general language. *Cullers v. Platt*, 81 Tex. 258, 16 S.W. 1003 (1891); 19 Tex.Jur.2d Deeds § 114 (1960). Applying this rule to the case before us, I believe that the contract clearly expresses an intent that the triangle be included as part of the property to be conveyed, even though the Walker Survey was omitted from the description. The sketch certainly provides more specific descriptive data than a survey name. Viewing the contract as a whole, it is evident that the Walker Survey was omitted by mistake. Where a part of a description is obviously false, that part may be disregarded and the description sustained as valid if, after rejection of that which is false, the remaining data is sufficient to identify the property with reasonable certainty. *Cartwright v. Trueblood*, 90 Tex. 535, 39 S.W. 930 (1897); *Reserve Petroleum Co. v. Harp*, 148 Tex. 448, 226 S.W.2d 839 (1950). Since it is clear that the triangle can be located without reference to a survey, the failure of the parties to name the Walker Survey is not fatal to the description.

The majority opinion also holds that, even if the contract had been reformed to include reference to the Walker Survey, the description of the triangle would still be fatally defective. Although the reasoning of the opinion is again unclear, the majority apparently deem it necessary to the description that each of the ten named tracts be specifically identified on the sketch. I am unable to see why such a requirement should be imposed. As movant for summary judgment, it was Dauley's burden to show that the description in the contract was defective as a matter of law. Dauley has submitted no evidence to show that the triangle is not one of the ten listed tracts named in the written portion of the contract. Snell, the president of U.S. Enterprises, has alleged in his affidavit in opposition to Dauley's motion for summary judgment that the property within the triangle is described as tract (9), "26 acres, more or less, known as the Harvey Burress property," and tract (10), "6 acres, more or less, known as the Decatur Baptist College property." No evidence to the contrary appears in the record. If Dauley could show that none of the ten tracts describe property in the triangle, then the ambiguity created by

such an inconsistency between the written portion of the contract and the sketch might indeed be fatal to the description. Absent such a showing, however, it cannot be said that a fatal ambiguity exists as a matter of law.

The majority, I believe, have made this case unnecessarily difficult by failing to properly formulate the issue before us. The opinion states that "[t]he sole question . . . is whether the summary judgment proof established as a matter of law that the written descriptions of tract 9 and tract 10 in the U. S. Enterprises-Gage contract (including the map) were insufficient under the Statute of Frauds to locate such tracts with reasonable certainty as comprising the triangle in the A. J. Walker Survey." Does this mean that petitioner must be able to locate the boundaries of each of the two separate tracts within the triangle from the information supplied by the contract before he is entitled to specific performance? Why should he be required to do so, when the exact boundaries of the triangle itself are shown, and it is clear from the contract that the parties intended to convey all the property within the triangle? Do the majority intend to say that the sketch cannot be used to locate the property if the written portion of the contract is not sufficient by itself to locate the property, without the aid of the sketch? If so, the majority is simply refusing to consider the map as part of the contract. Although the parties' use of a sketch to aid their description may be somewhat unorthodox, I cannot see why the information provided by the sketch should be ignored. Maps are often a valuable aid to the parties in determining exactly what property should be conveyed, supplying useful clues to the parties' true intent where metes-and-bounds descriptions are defective. In the case at hand the sketch provides precisely the necessary specific information of location which the written description lacks.

The test for determining the sufficiency of the description in this case is much simpler than the majority's statement of the issue would make it. That test is, could a person familiar with the locality, using only the written contract and the data it provides, locate the boundaries of the property in question and determine therefrom with reasonable certainty that the parties intended to include that property in their contract? I respectfully dissent from the majority's conclusion that such person could not.

While I will not lengthen an already lengthy dissent by discussing the many cases cited by the majority, I believe that all the authorities there relied upon are distinguishable. When analyzed in light of the objective of the Statute of Frauds, these authorities are inconsistent with the result reached by the majority. The very case cited by the majority for the rule which it purports to follow, *Wilson v. Fisher*, is clearly distinguishable from the case at hand. In *Wilson*, the contract which the Court found insufficient under the Statute of Frauds was to convey a "brick duplex & garage apt. located at 4328–30 Cedar Springs . . . . Room in back not included." The Court correctly held that it was impossible to identify the property to be conveyed with any certainty from this description. Cases which upheld similar descriptions, and which the Court in *Wilson* expressly found were distinguishable from the description before it, include *Morrison v. Dailey*, 6 S.W. 426 (Tex.1887) (where the property was described as "my place, known as the 'James Perry Tract of Land' "); *Fulton v. Robinson*, 55 Tex. 401 (1881) ("my own headright, lying on Rush Creek, in the cross timbers"); *Cunyus v. Hooks Timber Co.*, 20 Tex.Civ.App. 290, 48 S.W. 1106 (1889, no writ) ("one tract of land, known as the 'Vanmeter Survey' "); and *Sorsby v. Thom*, 122 S.W.2d 275 (Tex. Civ.App.—Galveston 1938, writ dism'd) ("Rock Island Plantation"). I believe that the description in the case before us is certainly as specific as the descriptions held sufficient in these cases.

The majority also rely on a more recent decision by this Court concerning the problem of sufficiency of description in a con-

tract of sale, *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.1972). *Morrow* is also easily distinguishable from the case at hand. The description there before the Court was of a certain tract

out of 145.8 acre tract of the Jefferson McGrew Survey No. 245, which acreage lies North of a line beginning at the Northeast corner of the First Tract above described and running North 75° East to a point in the West Boundary Line of Public Highway No. 277, commonly known as the Anson-Hawley-Abilene Highway, Jones County, Texas.

Although this description appears very detailed, it is apparent upon closer examination that the only boundary line provided by the description is the one on the south; nothing in the description gives any information from which the eastern, western or northern boundary lines might be located. Nor could these lines be located by reference to the boundaries of the 145.8-acre tract mentioned in the description, since the contract itself did not provide the boundaries of the larger tract, and its location could be supplied only by extrinsic evidence. Unlike the U. S. Enterprises-Gage contract, the Morrow contract contained no map from which the parties' intent could be further determined. The *Morrow* opinion correctly held that the contract did not provide the essential data from which the property's boundaries could be located on the ground with reasonable certainty.

Each case must stand on its individual facts, but the only question in every instance is whether the parties' intent can be ascertained with reasonable certainty from the face of the written instrument. I respectfully disagree with the conclusion of the majority that the written instrument in this case does not adequately reflect that intent. I would hold that Dauley has not proved as a matter of law that the description in question is insufficient to satisfy the Statute of Frauds.

POPE, REAVLEY and McGEE, JJ., join in this dissent.