F. F. GORE et al., Appellants,

v.

Mary J. CUNNINGHAM et al., Appellees.

No. 5083.

Court of Civil Appeals of Texas.

Beaumont.

Nov. 28, 1956.

Rehearing Denied Dec. 26, 1956.

Houston Thompson, Silsbee, Adams, Browne & Sample, Beaumont, Grover C. Lowe, Woodville, for appellant.

B. F. Whitworth, Jasper, W. H. Blades, Houston, A. M. Huffman, Beaumont, Bur-

ton Morris, Houston, A. L. Bevil, Kountze, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in a suit in trespass to try title in the district court of Hardin County.

Appellants F. F. Gore, et al., all the children and surviving heirs of W. J. Gore and his wife, Martha Jane Carraway Gore, brought the suit against appellees Mary J. Cunningham, surviving widow of R. E. Cunningham, and the surviving children of Mr. and Mrs. Cunningham, and Houston Oil Company of Texas, the American Republics Corporation, D. K. Cutshall, William Seale, and Mrs. Jewel Haralson, seeking to recover a one-half undivided interest in and to a 147 acre tract of land in the O. C. Nelson League in Hardin County. The petition contained a plea of ten years limitation title, in addition to the formal allegations in trespass to try title. The suit also was for one-half the value of the oil produced from said land.

The defendants answered with pleas of not guilty, general denial, 3-year, 5-year, 10-year, and 25-year statutes of limitation, Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519, bona fide purchaser, laches and stale demand, and Houston Oil Company of Texas and American Republics Corporation also pleaded improvements in good faith.

The trial was to a jury and at the conclusion of all the evidence in the trial court, the defendants moved for an instructed verdict and in the alternative that the court withdraw the case from the jury and render judgment for the defendants. The court granted the motion to withdraw the case from the jury and rendered judgment that the plaintiffs take nothing by their suit against the defendants. The plaintiffs in the trial court have duly perfected their appeal from such judgment.

The cause was submitted on briefs and oral argument of all parties, and thereafter on motion of the appellants the appeal was dismissed as to the appellees Houston Oil Company of Texas and the American Republics Corporation. The appellants here are children and grandchildren of W. J. Gore and his wife, Martha Jane Carraway Gore. The appellees Cunningham are the widow and children of R. E. (Bay) Cunningham, who died in 1939. The two oil companies, the appeal against which has been dismissed, were holders of an oil and gas lease on the land in suit from the Cunninghams. The appellees Cutshall, Haralson and Seale bought royalty interests from some of the Cunninghams.

By deed dated January 18, 1858, W. B. Frazier, Administrator of the Estate of David Brown, conveyed to Thomas J. Word both the O. C. Nelson League and the George W. Brooks League of land in Hardin County. Word conveyed by deed dated December 11, 1871, to W. N. Perryman 147 acres of land out of the G. W. Brooks League in Hardin County. The deed described the land by metes and bounds, as follows:

"Beginning on the North boundary line of said G. W. Brooks League, 225 varas from the Northwest corner of said League at a stake, whence a pine 18 in. dia. bears N. 75 deg. W. 4¾ vrs. a pine 20 in. dia. brs. S. 31 deg. 30′ E. 9¼ vrs;

"Thence East 1155 to a stake, whence a pine 10 in. dia. S. 60 deg. 30′ E. 4 vrs.;

"Thence South 720 varas to a stake;

"Thence West 1155 varas to a stake, whence a pine 30 in. dia. bears N. 70 deg. E. 4¾ varas a pine 18 inches dia brs. S. 67 deg. E. 7 varas;

"Thence North 720 varas to the place of beginning, containing one hundred forty seven acres of land, more or less, together with all and singular the rights, members, hereditaments and appurtenances to the same belonging or appertaining."

By deed dated August 13, 1872, Perryman conveyed to W. J. Gore "147 acres out of the G. W. Brooks League in Hardin

County" and such deed described the land conveyed by metes and bounds, using the same description with the same calls as that used in the Word to Perryman deed above. In 1871 W. J. Gore and his wife went into possession of the land in suit, which is in the O. C. Nelson League. W. J. Gore and his wife lived there for many years and Mrs. Gore died there in 1882, or 1883. Thereafter in 1884 W. J. Gore and his children moved off the land in the Nelson League to a home on the Rafferty League. Thereafter by deed dated May 5, 1896, W. J. Gore conveyed to Jesse Moss, who was an uncle of the appellants Gore, a tract of 147 acres of land out of the G. W. Brooks League. This deed used the same description as the two prior deeds mentioned. About six months after the date of the deed to Jesse Moss, Moss and his wife, Fronia Moss, went into possession of the land in controversy in the O. C. Nelson League. This deed to Moss was executed some 14 years after the death of Mrs. Gore. Thereafter Jesse Moss executed a deed to Delaney and Mc-Clelland and in such deed the land conveyed was described as a 147 acre tract of land in the Nelson League. This description placed the beginning corner of the tract 1225 varas from the Northwest corner of the Nelson League, but the calls for distances and corners were the same as the calls in the deed from Gore to Moss. This deed also contained the recitation, "This is the same land deeded to us by W. J. Gore on the 5th day of May, 1896." Thereafter McClelland, in 1915, and Delaney in 1919, conveyed to R. E. Cunningham "147 acres of land out of the Old C. Nelson League," and such deed of conveyance employed the same description as that in the deed from Jesse Moss and wife to Mc-Clelland and Delaney, describing land in the Nelson League. The appellees, Seale, Cutshall and Haralson own an undivided royalty interest in the land by virtue of conveyances executed by some of the Cunningham heirs. Gore and his wife and family resided on the land in suit, the land in the Nelson League, and later tenants of R. E. Cunningham resided on and cultivated portions of the land in controversy.

Appellants, in the course of the trial, introduced evidence to show that W. J. Gore and Mary Jane Carraway Gore were married in Hardin County in 1869, that Mrs. Gore died intestate either in April, 1882 or March, 1883, and that the appellants are the heirs, and successors in title and claim of heirs, of Mrs. Gore.

The appellants also introduced in evidence their requests for admissions of fact made upon the appellees, and appellees' answers to such requests for admissions. The requests Nos. 8, 9, 3, and 6, and the answers of the appellees thereto, and the legal effect of such requests and answers, form a large part of the controversy on this appeal.

By request No. 8, appellants requested appellees to admit that the land in controversy is the same tract of land as that described in the deed from Word to Perryman, dated December 11, 1871. The appellees admitted that the land in controversy is the same tract of land described in the Word to Perryman deed. The land described in the plaintiffs' petition, the land in suit, is 147 acres out of the O. C. Nelson League. The land described in the deed from Word to Perryman is described as 147 acres out of the G. W. Brooks League.

By request No. 9, the appellants requested the appellees to admit, and the appellees did admit, that Thomas J. Word had title to the land in controversy at the time of his deed to Perryman on December 11, 1871.

By request No. 3, the appellants asked the appellees to admit that the land in controversy is the same tract of land described in the deed from Perryman to Gore, dated August 13, 1872, and the appellees admitted that this was true. Again we note that the land in controversy is alleged to be 147 acres in the O. C. Nelson League and the

description of the land in the Perryman to Gore deed described 147 acres of land in the Brooks League.

By request No. 6, the appellants requested the appellees to admit, and the appellees did admit, that William H. Perryman had record title to the property described in the deed from Perryman to Gore, dated August 13, 1872.

From the instruments of title introduced in evidence, as set out above, and the requests for admissions and the admissions themselves, both appellants and appellees on appeal contend that they are shown to be the holders of the record title of the land in suit, the land in controversy, 147 acres out of the O. C. Nelson League in Hardin County. We are unable to agree with the contentions of either party in this regard.

■ We will discuss first the effect of the requests and admissions to the effect that the 147 acres of land in the O. C. Nelson League is the same tract of land as that described in a deed which describes a tract of land in the G. W. Brooks League. Rule 169, Texas Rules of Civil Procedure, provides that a party may make written request of other parties to a lawsuit for the admission by such party of the genuineness of any relevant documents described and exhibited with the request, or of the truth of any relevant matters of fact set forth by the request. The courts of this State have not been called upon in many instances to construe the operation of this rule, but according to the distinguished author of McDonald's Civil Practice in Volume 3 of that work, Paragraph 10.06, it is made clear that the purpose of the rule is to eliminate in advance of the trial fact issues which would not be in dispute, and that the rule does not contemplate or authorize admissions to questions involving points of law. It is apparent that the above request for admission that the land in controversy in the Nelson League was the same land described in a deed which described a tract of land in the Brooks League

did not involve a question of fact not in dispute. Also, we do not believe that a reviewing court is bound by the admissions of the appellees of purported matters of fact when the record before it shows that such admissions are not truthful, but that the opposite of the admissions is true. Likewise, it is apparent that the request to admit and the admission that Perryman had record title to the land in controversy, involved a question of law more than a matter of fact. The admissions did not constitute proof as a matter of law that the land in the Nelson League is the same tract described in the Word to Perryman deed, describing a tract in the Brooks League. They did not constitute proof as a matter of law that the land in the Nelson League is the same tract described in the Perryman to Gore deed, which described a tract in the Brooks League. They did not make it proof as a matter of law that Perryman had record title to the property described in his deed to Gore and therefore had record title to the land in controversy in the Nelson League. These instruments and the deed from Gore to Moss did not convey the land in controversy, because they did not in fact describe or mention the land in the Nelson League. See: Davis v. George, 104 Tex. 106, 134 S.W. 326; Cleveland State Bank v. Gardner, Tex.Com.App., 286 S.W. 173; Strong v. Garrett, 148 Tex. 265, 224 S.W.2d 471.

■ As we view the fact situation, the determination of this appeal must start from the beginning point that the ancestor of the appellants, W. J. Gore, went into possession of the land in controversy in the Nelson League when he had a deed to a tract of land in the Brooks League; that he went into possession of and occupied the land in the Nelson League for many years and probably acquired a valid limitation title to it; that when his wife died the appellants and those under whom they claim, acquired an equitable title to their mother's one-half of the community estate and thus an equitable title to one-half the

land in the Nelson League; that thereafter, some 14 years after the death of his wife, W. J. Gore attempted to convey the entire tract of land out of the Nelson League to Moss, but executed a deed to a tract of land out of the Brooks League; that the first deed to the land in the Nelson League in the chain of title of the appellees was the deed from Moss to Delaney and McClelland, which also stated that the land conveyed was the same land deeded to Moss by W. J. Gore, and this deed was not sufficient to convey record title to the land in the Nelson League to Delaney and McClelland, since Moss had no deed to the land in the Nelson League.

The motion of the appellees for judgment at the close of all the evidence sets out the following grounds in support of said motion:

"1

"The stipulations, requests for admissions, and the admissions made in answer and reply thereto, and the documentary and other evidence, show and establish, as a matter of law, that the legal title to the land in controversy vested in Wm. J. Gore on August 13, 1872, by virtue of a deed of such date from Wm. H. Perryman to Wm. J. Gore.

"2

"The evidence shows, as a matter of law, that Wm. J. Gore, by deed dated May 5, 1896, conveyed the land in controversy and the legal title thereto, to Jessie Moss.

"3

"The evidence, as a matter of law, establishes that Jessie Moss, joined by his wife, by deed dated August 6, 1913, conveyed the land in controversy and the legal title thereto, to L. B. McClelland and F. A. Delaney.

"4

"The evidence, as a matter of law, establishes that by deeds dated respectively, November 29, 1915, and January 31, 1919, L. B. McClelland and F. A. Delaney conveyed the land in controversy and the legal title thereto, to R. E. Cunningham.

"5

"The evidence, as a matter of law, establishes that the defendant, Mrs. Mary J. Cunningham, is the surviving wife of R. E. Cunningham, deceased, and the defendants, Thomas S. Cunningham, Jettie Briggs, whose husband is Richard Briggs, Jr., E. B. Cunningham, Thelma Sheffield, whose husband is E. L. Sheffield, M. M. Cunningham, Emma Cunningham, Mattie Lee Taylor, whose husband is C. W. Taylor, and Otelia Turner, whose husband is F. E. Turner, are all of the children and heirs at law of the said R. E. Cunningham, deceased.

"6

"The evidence, as a matter of law, establishes that Emma Cunningham is a Non Compos Mentis, and that M. M. Cunningham is the duly and legally appointed, acting and qualified guardian of the estate of the said Emma Cunningham.

"7

"The evidence, as a matter of law, establishes that by oil, gas and mineral leases dated respectively, June 22, 1948, and June 16, 1949, the defendant, American Republics Corporation, acquired the legal title to a seven/eighths (⅞ths) oil, gas and mineral leasehold estate in and to and covering the land in controversy, by leases from Mrs. Mary J. Cunningham, Jettie Briggs and husband, Richard Briggs, Jr., E. B. Cunningham, Thelma Sheffield and husband, E. L. Sheffield, Thomas S. Cunningham, M. M. Cunningham, Mattie Lee Taylor and husband, C. W. Taylor, Otelia Turner and husband, F. E. Turner, and M. M. Cunningham, Guardian of the Estate of Emma Cunningham, a Non Compos Mentis, and by virtue of such oil, gas and mineral leases, the legal title to seven-eighths (⅞ths) mineral leasehold estate in and to the land in controversy, vested in said defendant, American Republics Corporation.

"8

"The evidence establishes, as a matter of law, that by assignments dated December 20, 1948, and November 4, 1949, defendant, American Republics Corporation, assigned and conveyed to defendant, Houston Oil Company of Texas, an undivided one-half (½) interest in such seven/eighths (⅞ths) oil, gas and mineral leasehold estate in and to the land in controversy, and that by virtue of said assignments, the legal title to such one-half (½) interest in such seven/eighths (⅞ths) oil, gas and mineral leasehold estate, vested in the defendant, Houston Oil Company of Texas.

"9

"The evidence shows, as a matter of law, that plaintiffs herein, claim as heirs and assigns of Martha Jane Carraway Gore, the first wife of Wm. J. Gore, and that the title of said Martha Jane Carraway Gore to an interest in the land in controversy, if any she had, was an equitable title only. It follows, as a matter of law, therefore, that the title being *assered* by plaintiffs in this suit, to an interest in the land in controversy, is an equitable title and not a legal title.

"10

"The title asserted and relied on by plaintiffs, being an equitable title, and the evidence establishing that these defendants have and hold the legal title to a seven/eighths (⅞ths) oil, gas and mineral leasehold estate in and to the land in controversy, the burden is on plaintiffs to prove that these defendants are not bona fide purchasers, and the plaintiffs have wholly failed to discharge such burden in that they have not proven that these defendants are not bona fide purchasers, for value, of such leasehold estate, and have not introduced evidence which raises an issue to be submitted to the jury as to such matter.

"11

"The undisputed evidence showing that Wm. J. Gore conveyed the land in contro-

versy on May 5, 1896, and that plaintiffs did not bring suit seeking recovery of such equitable title claimed by them until August 29, 1952, laches and stale demand, under the circumstances as shown by the evidence herein, bar and estop plaintiffs from a recovery, and the plea of laches and stale demand, contained in the pleadings of these defendants, should be sustained, and judgment should be rendered in favor of these defendants and denying plaintiffs any recovery as against these defendants.

"12

"The undisputed evidence showing that this suit, based on a claim of equitable title, was not brought until more than fifty-six (56) years after Wm. J. Gore conveyed the legal title to the land in controversy, the presumption should be indulged that said Wm. J. Gore conveyed such land for the purpose of paying debts owing at the time of the death of Martha Jane Carraway Gore, his wife, and incurred during their marital relationship. Under the circumstances, it should be presumed that Wm. J. Gore sold and conveyed the land in controversy, for the purpose of paying community debts of himself and his deceased wife, Martha Jane Carraway Gore, and if such presumption be indulged, the plaintiffs cannot recover and judgment must be rendered denying plaintiffs any recovery as against these defendants.

"13

"The evidence, as a matter of law, establishes that these defendants and those through whom they claim and hold title have matured and perfected, and now hold title by adverse possession, under and by virtue of the three years statute of limitation of the State of Texas.

"14

"The overwhelming preponderance of the evidence, compels a conclusion and finding that these defendants and those through whom they claim and hold title, have ma-

tured and perfected title by adverse possession, under and by virtue of the three years statute of limitation of the State of Texas.

"15

"The evidence, as a matter of law, establishes that these defendants and those through whom they claim and hold title, have matured and perfected title and now have title, by adverse possession, under and by virtue of the five years statute of limitation of the State of Texas.

"16

"The overwhelming preponderance of the evidence, compels a conclusion and finding that these defendants and those through whom they claim and hold title, have matured and perfected title, by adverse possession, under and by virtue of the five years statute of limitation of the State of Texas.

"17

"The evidence, as a matter of law, establishes that these defendants and those through whom they claim and hold title, have matured and perfected title and now have title, by adverse possession, under and by virtue of the ten years statute of limitation of the 'State of Texas.

"18

"The overwhelming preponderance of the evidence, compels a conclusion and finding that these defendants and those through whom they claim and hold title, have matured and perfected title, by adverse possession, under and by virtue of the ten years statute of limitation of the State of Texas.

"19

"The evidence, as a matter of law, establishes that these defendants and those through whom they claim and hold title, have matured and perfected title and now have title, by adverse possession, under and by virtue of the twenty-five (25) years statute of limitation of the State of Texas.

"20

"The overwhelming preponderance of the evidence, compels a conclusion and finding that these defendants and those through whom they claim and hold title, have matured and perfected title, by adverse possession, under and by virtue of the twenty-five (25) years statute of limitation of the State of Texas.

"21

"The evidence in the case on the essential facts, is such that reasonable minds cannot differ as to its verity and inference, and when the proper verity is accorded such evidence, and the proper inference is drawn from it, these defendants are entitled to judgment that these plaintiffs take nothing from these defendants, and any other judgment in the case, would be entirely unsupported by the evidence.

"22

"The undisputed evidence establishes, as a matter of law, that Wm. J. Gore and Martha Jane Carraway Gore owed community debts, same being taxes on the land in controversy, at the time of her death, and the presumption must be indulged that said Wm. J. Gore sold and conveyed the land in controversy for the purpose of paying such community debts. When such presumption is indulged, it must be held that Wm. J. Gore conveyed full and perfect title, both legal and equitable, by his deed to Jessie Moss, dated May 5, 1896.

"Wherefore, these defendants pray that the Court withdraw this case from the jury as to these defendants, and render judgment that plaintiffs take nothing as against these defendants, or, in the alternative, that the court instruct the jury to return a verdict in favor of these defendants and against the plaintiffs."

■ In view of the fact that the appellants have dismissed their appeal as to Houston Oil Company of Texas and American Republics Corporation, the mat-

ters set out in paragraphs 7 and 8 in the above motion to withdraw the case from the jury and render judgment in favor of the appellees, defendants in the trial court, cannot be considered now in support of such action of the trial court as it affects the remaining appellees.

In view of our views announced above that the various deeds which employed a description of land out of the Brooks League did not convey record title to the land in controversy, the land in the Nelson League, and that the other conveyances, beginning with the deed from Moss to Delaney and McClelland did not convey legal title to the land in controversy, various other grounds in said motion must now be considered as finding no support in the record. The reasons for this are that Grounds Nos. 1, 2, 3, and 4, 10, 11 and 12 all begin with the erroneous assumption that the evidence, stipulations and admissions show as a matter of law that W. J. Gore acquired legal title by his deed from Perryman, that Gore conveyed the land in controversy and legal title thereto to Moss by his deed, and that the deeds from Moss to McClelland and Delaney and from McClelland and Delaney to R. E. Cunningham conveyed the land in controversy and the legal title thereto. Ground No. 10 assumes that the evidence established that the defendants had legal title to a ⅞ths leasehold estate, and Ground No. 11 is based on the assumption that Gore conveyed the land in controversy by his deed to Moss in 1896, and urges defense of laches and stale demand. Likewise Ground No. 12 assumes that Gore's deed to Moss conveyed the legal title to the land in controversy, then urges that it must be presumed that Gore conveyed the land for the purpose of paying community debts of himself and his deceased wife. Ground No. 22 assumes that Gore conveyed the land in controversy and urges that he did so for the purposes of paying community debts. These are all based on erroneous assumptions of what the evidence showed as a matter of law.

Grounds set forth in paragraphs 5, and 6 and 9 of said motion simply state that the present Cunningham appellees are the children and heirs at law of R. E. Cunningham, deceased; that M. M. Cunningham, the appellee, is the guardian of the estate of one other named appellee, Emma Cunningham; that the appellants' claim as heirs and assigns of Martha Jane Carraway Gore was grounded upon an equitable title only to the land in controversy. There is no dispute as to the correctness of these matters in paragraphs 5, 6 and 9, but they show no ground in support of the motion, except as they pertain to the remaining grounds discussed below.

As we view the record, none of these grounds set forth in said motion present matters which would warrant sustaining the motion of the present appellees for instructed verdict or to withdraw the case from the jury and render judgment for these appellees.

Such a conclusion leaves for consideration only the matters set out in paragraphs 13, 14, 15, 16, 17, 18, 19, 20, and 21. These grounds present the contention of the appellees that they now hold title by adverse possession under the 3-year, 5-year, 10-year, and 25-year statutes of limitation, as a matter of law. Paragraph 21 of this group is a general one and is that the evidence in the case on the essential facts is such that reasonable minds cannot differ as to its verity and inference, and when the proper verity is accorded such evidence, and the proper inference is drawn from it, the appellees are entitled to judgment that these appellants take nothing in their suit, and that any other judgment in the case would be entirely unsupported by the evidence.

In other words, we believe this appeal must be decided upon the contentions of these appellees that the evidence as a matter of law, or the overwhelming preponderance of the evidence, entitle them to this judgment against the appellants by limitation.

We agree with the contention of the appellants that the facts in regard to the claims of limitation of these appellees are not undisputed. As we view the evidence from a reading of the lengthy statement of facts, it was of such a nature that it raised various fact issues which required the submission thereof to the jury for determination, and it was not of such a conclusive nature as to support the action of the trial court in withdrawing the case from the jury and rendering judgment for the appellees. A discussion of such evidence and a summary thereof is necessary.

At the time of the execution of the deed from W. J. Gore, father of the appellants, to Jesse Moss, Jesse Moss was living at the home of the appellants. He was an uncle and well acquainted with the family. He also lived nearby when their mother died and knew of her death. He was therefore charged with notice of the equitable title which the appellants owned in the land. He was charged with notice of their claim of an equitable title to half of the land by inheritance from their mother. The relation between Jesse Moss and the appellants then became that of co-tenancy. The appellees assert in their brief that even if it be conceded for the purpose of argument that such relation of co-tenancy existed, it was repudiated by Moss when he placed his deed of record to the land, since by such deed by Gore conveyed the entire interest in the land. We are unable to agree with this contention because of the fact that the deed which Moss took and placed of record did not describe the land as being in the O. C. Nelson League. It described and purported to convey the land in the Brooks League. We cannot find any act of repudiation of co-tenancy as a matter of law in the filing for record of the deed conveying land in the Brooks League. It was evidence thereof, but not conclusive. It appears then that there was a question of fact raised regarding the adverse possession and claim of Moss, Cunningham, and McClelland and Delaney, and of notice thereof to the appellants.

There was evidence on the part of the appellants, also, that after Jesse Moss went into possession of the land in controversy he lived there awhile and moved off and came back; that the Mosses moved away at least twice; that Moss sold the property and moved away and it was vacant four or five years; that after that one Brown moved there and stayed about two years and afterwards McKee and Hutto were on the place two or three months, then the place was vacant for a year or two, then one Forrest stayed there about six months, then the place was vacant for a short time, then Stanley Gore moved on the place; the house burned down on the place in 1930, that no one lived there for several months.

The appellants also introduced evidence that the Mosses, Jesse Moss and wife, at various times during their occupancy of the land admitted that he had not bought the interest in the land owned by the deceased mother of the appellants; that they were claiming but one-half of it. Appellants also submitted proof that Bay Cunningham, the ancestor of the Cunningham appellees, admitted the ownership of the appellants of one-half interest in the property and he told William J. Gore, in 1924, that he wanted to sell the timber there and wanted to see the Gores first, because, as he said, "I always knew the place, and knew it was your mother's and father's; that he always wanted to divide the property, but he didn't want to sell it without their consent; that the witness consented and told him to go ahead and sell the timber and keep the taxes paid up on the land. Bay Cunningham was a neighbor of appellants, knew the family and knew of the death of their mother. J. M. Gore testified that in 1909 he cut switch ties off the land in suit, sold the ties, that the Mosses were living on the place at that time and made no objection to his cutting the trees. There was other testimony about other people cutting timber off the land in 1925, while nobody was living on the property; that it was not being cultivated and it appeared

not to have been cultivated for two or three years. The last occupancy of the land was in 1932 and probably the last cultivation was in 1931.

We cannot agree with the contention of the appellees that they were entitled to judgment by the court under the three years statute of limitations, because as we view the matter, the deed under which they claim and went into possession of the land does not connect them with the sovereign of the soil. Their chain of title by mesne conveyances begins with the deed from Moss to McClelland and Delaney, and before the Moss deed, they do not have a deed in their chain of title connecting them with the sovereign.

■ There was a great deal of other testimony, of course, in behalf of the appellees tending to show that the land in controversy was in the possession of the appellees and their predecessors in title, that such possession and use and cultivation or enjoyment were adverse to the claims of the appellants. It appears to us, however, that when such evidence is viewed in connection with the evidence we have noted above and a great volume of other testimony of like import, the evidence was not sufficient to sustain the action of the trial court in withdrawing the case from the jury and rendering judgment for the appellees. It went only so far as to present fact issues in regard to appellees' title by limitation. We believe that the trial court's action in withdrawing the case from the jury and rendering judgment that appellants take and recover nothing as to the Cunningham appellees was error, and requires reversal of the judgment as to them.

■ The appellees, D. K. Cutshall, William Seale and Mrs. Jewel Haralson, appear to be in a different position from that of the other appellees. In the course of the trial, the parties stipulated that the named appellees own an undivided ten five hundred twelfths royalty interest in the property in suit. These named appellees presented to the trial court their motion for judgment, which motion adopted in toto the motion for judgment filed by the Houston Oil Company of Texas and American Republics Corporation, and also in their motion presented the point that the uncontroverted evidence showed that the Cunninghams, appellees here, were the owners of at least an undivided one-half interest in the land in controversy, and that the named appellees had purchased from the said Cunninghams the royalty interest of ten five hundred twelfths and such one-half undivided interest was more than sufficient as a source of title for their fractional royalty interest, and that they were entitled to an instructed verdict in their favor, or if the case should be withdrawn from the jury and judgment rendered by the court, judgment should be rendered in their favor. They maintain in their brief that regardless of the disposition of the appeal between the appellants and the other appellees, the record requires that the judgment of the trial court be affirmed as to their interest. This contention is on solid ground and is not opposed by any of the parties to this appeal. It was stipulated that these appellees "own and undivided ten five hundred twelfths royalty interest in the property in suit." Appellants' suit was only for a one-half undivided interest in the land. If appellants should prevail upon another trial, a judgment in their favor for a one-half undivided interest, the remaining undivided half interest not recovered from the Cunningham appellees would be sufficient to support a judgment in favor of these named appellees for their fractional royalty interest, which emanates from the Cunningham title. Their contention is sustained and judgment in their favor will be affirmed.

The judgment of the trial court that the appellants take and recover nothing against appellees D. K. Cutshall, William Seale and Mrs. Jewel M. Haralson is affirmed. The judgment that the appellants take and recover nothing as against all the other remaining appellees is reversed and the cause is remanded for a new trial.