The **PROFITLIVE PARTNERSHIP** and Profitlive, Inc., Appellants,

v.

Cheryl M. **SURBER** and Johnson Property Investments, Inc., Appellees.

No. 02–05–188–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 16, 2007.

---

Hughes & Luce, L.L.P., David R. Seidler, Megan K. Dredla, Fort Worth, for appellants.

Storm, L.L.P., John W. MacPete, Dallas, for appellees.

PANEL A: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

### I. Introduction

Appellants The Profitlive Partnership and Profitlive, Inc. (collectively, Profitlive) appeal the trial court's summary judgment for appellees Cheryl M. Surber and Johnson Property Investments, Inc. (JPI) on appellees' common law fraud and conspiracy claims. We reverse and remand.

Profitlive operated Creative Real Estate Workships (CREW) in the Dallas–Fort Worth area. In May 2001, after listening to a radio broadcast, attending several CREW workshops, and meeting with Profitlive's president, Dan Franklin, Surber invested $100,000 on behalf of JPI in exchange for a 10% ownership interest in Profitlive. Four months later, Profitlive was no longer operating, and appellees had realized only a dismal return on their investment. In December 2001, appellees sued Profitlive, alleging claims for common law fraud and conspiracy.

During the discovery period, appellees served requests for admissions on Profitlive. Profitlive did not respond to the requests for admissions; consequently, pursuant to procedural rule 198.2(c), the requests were deemed admitted by Profitlive.[1] Thereafter, appellees filed a motion for summary judgment supported primarily by the deemed admissions and Surber's affidavit. Profitlive did not respond to the motion or appear at the summary judgment hearing. The trial court granted appellees' motion and rendered a summary judgment awarding them nearly $700,000 in actual and exemplary damages and interest.

In its first issue, Profitlive complains that the summary judgment for appellees is improper because it is based on the affidavit of Surber, an interested party, and Profitlive's deemed admissions that should have been stricken based on principles of equity. Profitlive also argues that the summary judgment evidence does not satisfy appellees' burden of proof.

The function of summary judgment is not to deprive a litigant of his right to trial by jury but to eliminate patently unmeritorious claims and untenable defenses.[2] Thus, a plaintiff is entitled to summary judgment on a cause of action only if she conclusively proves all essential elements

---

1. See TEX.R. CIV. P. 198.2(a) (providing that a party must respond to requests for admissions within thirty days); TEX.R. CIV. P. 198.2(c) ("If a response is not timely served, the request is considered admitted without the necessity of a court order.").

2. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

of her claim as a matter of law.[3] When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[4] When the movant's summary judgment proof fails to conclusively establish each element of her cause of action, the trial court may not grant summary judgment by default simply because the nonmovant did not respond to the summary judgment motion.[5]

■ To be entitled to summary judgment, appellees were required to establish each element of their causes of action as a matter of law. The elements of common law fraud are (1) a material representation, (2) that is false, (3) which was either known to be false when made or was made recklessly without knowledge of its truth, (4) with the intent that the representation be relied upon, (5) that it was relied upon, and (6) which caused injury.[6] The elements of civil conspiracy are: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result.[7]

■ In this case, the summary judgment awards appellees actual damages of $229,448.25; however, the summary judgment evidence does not conclusively establish that appellees suffered damages in this amount as a result of Profitlive's con-

duct. Profitlive's deemed admissions, on which appellees rely, establish that appellees were induced by Profitlive's false, material misrepresentations to invest $100,000 in Profitlive and that the only return appellees received on this investment was $1,000. This evidence is controverted, however, by Surber's own affidavit, which avers that appellees were damaged in the "approximate" amount of $229,448.25 and that the return appellees received on their investment was $1,100. Specifically, Surber's affidavit avers as follows:

As a result of the misrepresentations made by [Profitlive], and as a result of the conspiracy [of] Franklin and [Profitlive's partners, officers, and directors, appellees] have actually been damaged in the *approximate* amount of $229,448.25 plus interest.... These actual damages are based on my original investment of $100,000.00 ... plus interest.... I have spent approximately 2500 hours during the course of this litigation investigating and pursuing this case, time which, if not for [Profitlive's] actions, I would have spent doing consulting or other employment activities utilizing my M.B.A. I am only seeking damages for 1500 hours of my time ... at a consulting rate of $50/hour, which is reasonable given my education and experience.... The total amount of [appellees'] damages is *approximately*

3. *See* TEX.R. CIV. P. 166a(a), (c); *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

4. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex. 2004).

5. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222–23 (Tex.1999); *City of Houston,* 589 S.W.2d at 678.

6. *Johnson & Johnson Med., Inc. v. Sanchez,* 924 S.W.2d 925, 929–30 (Tex.1996); *Malone v. Sewell,* 168 S.W.3d 243, 252 (Tex.App.-Fort Worth 2005, pet. denied).

7. *Tri v. J.T.T.,* 162 S.W.3d 552, 556 (Tex. 2005).

$229,448.25 plus interest.... [Emphasis supplied.] [8]

Thus, appellees' own summary judgment evidence raises a material issue of fact regarding the amount of their damages. Because appellees have failed to conclusively establish that they are entitled to summary judgment on all essential elements of their causes of action, the judgment must be reversed.[9]

Upon reversal of a summary judgment, our ordinary disposition is to remand for a new trial. The effect of a new trial is that all proceedings in the trial court are set aside and the cause is reinstated on the docket as though it had never been tried.[10]

Rule 44.1(b) of the Texas Rules of Appellate Procedure provides in part that this court "may not order a separate trial solely on unliquidated damages if liability issues are contested."[11] We conclude that the restriction of Rule 44.1(b) applies in this case because the damages are unliquidated; therefore, we reverse the entire summary judgment and remand the case for a new trial on both liability and damages. Because this disposition comports with Profitlive's prayer[12] and affords Profitlive the greatest relief we can grant them on appeal, it is not necessary to address Profitlive's arguments challenging the competency of Surber's affidavit, the propriety of the deemed admissions, or the trial court's award of punitive damages.

We sustain Profitlive's first issue,[13] reverse the trial court's summary judgment for appellees, and remand the cause to the trial court for a new trial.

WALKER, J., filed a concurring and dissenting opinion.

SUE WALKER, Justice, concurring and dissenting.

The trial court entered a $688,344.75 traditional summary judgment that included an award of $458,896.50 in exemplary damages against Appellants Profitlive Partnership and Profitlive, Inc. based in part exclusively on seventy-three merits-preclusive deemed admissions.[1] I concur with the majority opinion reversing the summary judgment on the ground that

---

**8.** Indeed, appellees' original $100,000 investment less the $1,000 return that they received from Profitlive, plus Surber's damages for 1,500 hours of her time at $50 per hour, equals only $174,000. The remainder of the damages amount that appellees claim is prejudgment interest and $3,000 for "expenses."

**9.** *See MMP, Ltd.,* 710 S.W.2d at 60 (holding that summary judgment is improper where the summary judgment evidence does not conclusively establish all essential elements of the plaintiff's cause of action); *see also CEBI Metal Sanayi Ve Ticaret A.S. v. Garcia,* 108 S.W.3d 464, 466 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (holding that summary judgment based on deemed admissions was improper where the admissions contradicted each other, thereby creating fact issues).

**10.** *State Dep't of Hwys. & Pub. Transp. v. Ross,* 718 S.W.2d 5, 11 (Tex.App.-Tyler 1986, no writ); *see Hudson v. Wakefield,* 711 S.W.2d 628, 630–31 (Tex.1986) (holding that when a summary judgment is reversed and remanded for trial, litigants are not restricted to the issues raised in the summary judgment proceeding).

**11.** Tex.R.App. P. 44.1(b); *cf.* Tex.R. Civ. P. 320 (providing that no new trial on unliquidated damages alone shall be ordered if liability is contested).

**12.** In its prayer, Profitlive states the following: "For the foregoing reasons, Profitlive Defendants respectfully request that this Court reverse the trial court's order granting summary judgment to Plaintiffs and awarding Plaintiffs exemplary damages, and grant such other relief as may be necessary."

**13.** *See* Tex.R.App. P. 47.1.

**1.** A complete copy of the deemed admissions is attached as "Exhibit 1."

Appellees' summary judgment evidence did not conclusively establish actual damages. In this appeal Appellants also assert, however, that the seventy-three merits-preclusive deemed admissions should be set aside. Although Appellants expressly challenge these deemed admissions, the majority fails to address this issue; the majority opinion leaves unresolved the issues of whether the deemed admissions should be set aside by virtue of this appeal, whether Appellants should have the opportunity to seek to "undeem" the admissions on remand, and whether the admissions seek the type of information that may be "deemed" admitted in any event. *See, e.g., Wheeler v. Green,* 157 S.W.3d 439, 443 (Tex.2005) (reversing summary judgment based on deemed merits-preclusive admissions); *Stelly v. Papania,* 927 S.W.2d 620, 622 (Tex.1996) (per curiam) (explaining that requests for admissions were "never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense"); *Boulet v. State,* 189 S.W.3d 833, 838 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (citing *Gore v. Cunningham,* 297 S.W.2d 287, 291 (Tex.Civ. App.-Beaumont 1956, writ ref'd n.r.e.), and noting that "the purpose of the rule [regarding requests for admissions] is to eliminate in advance of the trial fact issues which would not be in dispute, and that the rule does not contemplate or authorize admissions to questions involving points of law"); *White v. Watkins,* 385 S.W.2d 267, 269 (Tex.Civ.App.-Waco 1964, no writ) (noting that "conclusions, opinions, and statements of subjective intent . . . should not be deemed admitted facts"); *Fort Bend Cent. Appraisal Dist. v. Hines Wholesale Nurseries,* 844 S.W.2d 857, 858–59 (Tex.App.-Texarkana 1992, writ denied) (explaining that "[a] deemed admission of a purely legal issue is of no effect").

A court of appeals must address every issue raised and necessary to a final disposition of the appeal; this requirement is mandatory, and courts of appeals are not at liberty to disregard it. *See* TEX.R.APP. P. 47.1; *West v. Robinson,* 180 S.W.3d 575, 575–76 (Tex.2005) (reversing court of appeals' judgment because court of appeals failed to address all issues necessary to final disposition of the appeal); *Lone Star Gas Co., a Div. of Enserch Corp. v. R.R. Com'n of Tex.,* 767 S.W.2d 709, 710 (Tex.1989) (per curiam) (same); *see also State Bar of Tex. v. Evans,* 774 S.W.2d 656, 658 n. 6 (Tex.1989) (recognizing court of appeals erred by not addressing each argument necessary to disposition of the appeal). Because the majority fails to address an issue raised by Appellants that, if sustained, would grant Appellants additional and greater relief on appeal than simply a reversal of the summary judgment, I respectfully dissent.

Exhibit 1

**CAUSE NO. 067–190594–01.**

**Cheryl M. SURBER, and JOHNSON PROPERTY INVESTMENTS, INC., Plaintiffs,**

**v.**

**DAN R. FRANKLIN, THE PROFIT-LIVE PARTNERSHIP, PROFIT-LIVE, INC., W. JORDAN WOY, MAXIMUM BENEFITS, L.L.C. a/k/a "MBC," GREGORY A. KNAPP III and JAY F. LOMBARDO, Defendants.**

**DISTRICT COURT OF TEXAS, 67- JUDICIAL DISTRICT, TARRANT COUNTY.**

*PLAINTIFFS' SECOND SET OF REQUESTS FOR ADMISSIONS*

To: Defendants Dan R. Franklin, the ProfitLive Partnership, and ProfitLive,

Inc., W. Jordan Woy, and Jay F. Lombardo.

From: Plaintiffs Cheryl M. Surber and Johnson Property Investments, Inc., by and through their attorneys of record, John W. MacPete, Paul V. Storm, and Robin L. Barnes, Storm & Hemingway, L.L.P., 8117 Preston Road, Suite 460, Dallas, Texas 75225.

Pursuant to Texas Rule of Civil Procedure 198, Defendants Franklin, the ProfitLive Partnership, ProfitLive, Inc., W. Jordon Woy, and Jay F. Lombardo are requested to respond to the following Requests for Admissions within 30 days of service of these requests.

*INSTRUCTIONS AND DEFINITIONS*

1. As required by Texas Rule of Civil Procedure 193.2, if you object to any of the Requests for Admissions, you must state specifically the legal or factual basis for the objection and the extent to which you are refusing to comply with the Request.

2. As required by Texas Rule of Civil Procedure 198.2, if you deny all or any part of a Request, your denial must fairly meet the substance of the Request and when good faith requires that you qualify an answer or deny only part of the Request, you must specify that part of the Request which you admit is true and qualify or deny the remainder.

3. As required by Texas Rule of Civil Procedure 198.2, you may not refuse to admit or deny a Request based on lack of information or knowledge unless you have made a reasonable inquiry regarding the subject matter of the Request and respond that the information known or easily obtainable is insufficient to enable you to respond by admitting or denying.

4. As required by Texas Rule of Civil Procedure 193.2, if you claim that material or information responsive to any Request herein is subject to a claim of privilege, you must make a proper withholding statement indicating the Request to which information has been withheld and the nature of the privilege asserted.

5. According to Texas Rule of Civil Procedure 198.2, you must respond to these requests within 30 days of service or these Requests will be considered admitted.

6. Whenever the masculine gender is used herein, it should be taken to include the feminine gender where appropriate.

7. The singular includes the plural and the plural includes the singular.

8. As used herein, the terms "suit," "lawsuit," or "action" refer to the above-captioned lawsuit.

9. "Defendants" shall mean any or all of the Defendants named in this lawsuit, unless a particular Defendant or Defendants are specifically identified.

10. "You" and "your" shall mean Defendants Franklin, the ProfitLive Partnership, ProfitLive, Inc., W. Jordan Woy, and/or Jay F. Lombardo.

11. The term "Plaintiffs" shall mean Cheryl M. Surber and Johnson Property Investments, Inc.

12. The term "partners" or "partners of the ProfitLive Partnership" refers to any and all current and former partners of Defendant ProfitLive Partnership, excluding Plaintiffs notwithstanding Plaintiffs' payment of $100,000.00 for a purported interest in the ProfitLive Partnership.

13. "Entity" or "entities" shall mean any natural person or any business, legal or governmental association, including but not limited to partnerships, corporations, limited liability companies, and joint ventures.

14. "Concerning" means relating to, referring to, describing, evidencing or constituting.

15. The connectives "and" as well as "or" shall be construed disjunctively as well as conjunctively as necessary in order to bring within the scope of the following requests all information which might otherwise be construed to be outside their scope.

16. "All" and "each" shall be construed as both all and each.

17. The terms "person" or "persons" include natural persons, firms, partnerships, associations, joint ventures, corporations and business entities operating under an assumed name.

18. "All documents" means any and all documents, as defined broadly in Federal Rule of Civil Procedure 26, that are, or may come into, your possession, custody or control.

19. As used herein, the term "communicated" or "communication" means any transmission of information between or among two or more persons, by written, oral, electronic, or any other means, without limitation.

### REQUESTS FOR ADMISSIONS

Defendants Franklin, ProfitLive Partnership, ProfitLive, Inc., W. Jordan Woy, and Jay F. Lombardo are requested to admit that:

1. Defendant Franklin represented to Plaintiff Surber that the $100,000.00 payment by Plaintiffs made to ProfitLive, Inc. on or around May 25, 2001 for a purported interest in the ProfitLive Partnership would be used to produce a website, to pay for expenses associated with Creative Real Estate Workshops, and to maintain a radio program on WBAP 820 AM, all to promote the activities of Defendant the ProfitLive Partnership.

2. Defendant Franklin represented to Plaintiff Surber that all profits derived from the website, Creative Real Estate Workshops, the WBAP radio program, and from real estate deals brought to Defendants through the Creative Real Estate Workshops would flow to Defendant ProfitLive Partnership for the benefit of the partners, which would include Plaintiffs after receipt of the $100,000.00 payment to ProfitLive, Inc. for an interest in the ProfitLive Partnership.

3. Defendant Franklin represented to Plaintiff that the profits derived from the workshops described in Request for Admission No. 2 were about $30,000 to $50,000 per workshop.

4. Defendant Franklin represented to Plaintiff Surber that Plaintiffs would realize a substantial profit, including a profit of at least $10,000/month, from their $100,000.00 investment in the ProfitLive Partnership and ProfitLive, Inc.

5. On or around May 25, 2001 Defendant Franklin represented to Plaintiff Surber that ProfitLive, Inc. and the ProfitLive Partnership were in the process of expanding the workshops and radio programs described in Request for Admission No. 2 to numerous other cities around the country to increase the profits that would flow to Defendant ProfitLive Partnership for the benefit of the partners, which would include Plaintiffs after receipt of the $100,000.00 payment to ProfitLive, Inc. for an interest in the ProfitLive Partnership.

6. Defendant Franklin made the representations in Requests for Admission Nos. 1, 2, 3, 4, and 5 on behalf of, and as a partner in, Defendant the ProfitLive Partnership.

7. Defendant Franklin made the representations in Requests for Admission Nos.

1, 2, 3, 4, and 5 on behalf of, and as an officer, director, shareholder, and agent of, Defendant ProfitLive, Inc.

8. The representations made by Franklin in Requests for Admission Nos. 1, 2, 3, 4, and 5 were false.

9. At the time the representations in Requests for Admission Nos. 1, 2, 3, 4, and 5 were made, Franklin knew they were false or made them recklessly without any knowledge of the truth and made them as positive assertions and Franklin intended for Plaintiffs to rely on these representations in making the $100,000.00 payment to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership.

10. Plaintiffs had no reason to doubt the representations made by Franklin in Requests for Admission Nos. 1, 2, 3, 4, and 5 and acted justifiably in reliance on those representations.

11. The representations made by Defendant Franklin to Plaintiff Surber in Request for Admission Nos. 1, 2, 3, 4, and 5 were made in the presence of Defendants Woy and/or Lombardo.

12. Defendants Woy and/or Lombardo had knowledge of the representations made by Defendant Franlin to Plaintiff Surber in Request for Admission Nos 1, 2, 3, 4, and 5 at or around the time such representations were made.

13. Defendants Woy and Lombardo did not object to or attempt to correct the representations made by Defendant Franklin to Plaintiff Surber in Request for Admission Nos. 1, 2, 3, 4, and 5.

14. Defendants Woy and Lombardo approved or ratified the representations described in Request for Admission Nos. 1, 2, 3, 4, and 5.

15. At the time the representations in Requests for Admission Nos. 1, 2, 3, 4, and 5 were made, Defendants Woy and Lombardo knew they were false or were being made recklessly without any knowledge of the truth and were being made as positive assertions and Defendants Woy and Lombardo intended for Plaintiffs to rely on these representations in making the $100,000.00 payment to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership

16. But for the misrepresentations made by Franklin in Requests for Admission Nos. 1, 2, 3, 4, and 5, Plaintiffs would not have paid $100,000.00 to the ProfitLive Partnership or ProfitLive, Inc.

17. But for Defendants Woy and Lombardo's failure to object to or correct the misrepresentations made by Defendant Franklin in Requests for Admission Nos. 1, 2, 3, 4, and 5 Plaintiffs would not have paid $100,000.00 to the ProfitLive Partnership or ProfitLive, Inc.

18. But for the approval or ratification by Defendants Woy and Lombardo of the misrepresentations made by Defendant Franklin in Requests for Admission Nos. 1, 2, 3, 4, and 5, Plaintiffs would not have paid $100,000.00 to the ProfitLive Partnership or ProfitLive, Inc

19. Plaintiffs were injured by Franklin's misrepresentations in Requests for Admission Nos. 1, 2, 3, 4, and 5.

20. Plaintiffs were injured by Defendants Woy and Lombardo's failure to object or to correct the misrepresentations made by Franklin in Requests for Admissions Nos. 1, 2, 3, 4, and 5.

21. Plaintiffs were injured by Defendants Woy and Lombardo's approval or ratification of the misrepresentations made by Franklin in Requests for Admissions Nos. 1, 2, 3, 4, and 5.

22. Franklin omitted material facts regarding how the $100,000.00 paid by Plaintiffs to ProfitLive, Inc. would be used in

order to induce Plaintiffs to pay for an interest in the ProfitLive Partnership or invest in ProfitLive, Inc.

23. Franklin omitted material facts regarding the amount of profits that Plaintiffs would realize from their $100,000.00 investment in the ProfitLive Partnership and ProfitLive, Inc. in order to induce Plaintiffs to pay for an interest in the ProfitLive Partnership or invest in Profit-Live, Inc.

24. Franklin omitted material facts regarding the solvency, financial condition, and bookkeeping records of the ProfitLive Partnership and ProfitLive, Inc. and regarding his history of bankruptcy or insolvency as a result of the operation of businesses substantially similar to those of the ProfitLive Partnership and ProfitLive, Inc. in order to induce Plaintiffs to pay for an interest in the ProfitLive Partnership or invest in ProfitLive, Inc.

25. Defendants Woy and/or Lombardo were present during conversations between Franklin and Plaintiffs in which Franklin omitted the material facts described in Request for Admission Nos. 22, 23, and 24.

26. Defendants Woy and Lombardo had knowledge that Franklin was omitting the material facts described in Request for Admission Nos. 22, 23, and 24 at or around the time of such omissions.

27. Defendants Woy and Lombardo did not object to or attempt to correct the omission of material fact described in Request for Admission Nos. 22, 23, and 24.

28. Defendants Woy and Lombardo approved or ratified the omission of material fact described in Request for Admission Nos. 22, 23, and 24.

29. At the time Plaintiffs made the $100,000.00 payment to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership, Franklin knew that he had omitted the material facts described in Requests for Admissions Nos. 22, 23, and 24 and Franklin intended Plaintiffs to rely on the facts as stated, with the material facts having been omitted, in making the $100,000.00 payment.

30. Defendants Woy and Lombardo intended Plaintiffs to rely on the facts as stated by Franklin, with the material facts described in Requests for Admissions Nos. 22, 23, and 24 having been omitted, in making the $100,000.00 payment to Profit-Live, Inc. for a purported interest in the ProfitLive Partnership.

31. Plaintiffs were injured by the omission of the material facts described in Requests for Admission Nos. 22, 23, and 24.

32. But for the omissions of material facts described in Requests for Admission Nos. 22, 23, and 24, Plaintiffs would not have paid $100,000.00 to the ProfitLive Partnership or ProfitLive, Inc.

33. But for the failure of Defendants Woy and Lombardo to object to or correct the omissions of material facts described in Requests for Admission Nos. 22, 23, and 24, Plaintiffs would not have paid $100,000.00 to the ProfitLive Partnership or ProfitLive, Inc.

34. But for the approval or ratification by Defendants Woy and Lombardo of the omissions of material facts described in Requests for Admission Nos. 22, 23, and 24, Plaintiffs would not have paid $100,000.00 to the ProfitLive Partnership or ProfitLive, Inc.

35. Defendant Franklin omitted the material facts described in Requests for Admission Nos. 22, 23, and 24, on behalf of, and as a partner in, Defendant the ProfitLive Partnership for the purpose of promoting the interests of the ProfitLive Partnership.

36. Defendant Franklin omitted the material facts described in Requests for Admission Nos. 22, 23, and 24 on behalf of, and as an officer, director, shareholder, and agent of, Defendant ProfitLive, Inc. for the purpose of promoting the interests of the ProfitLive Partnership and Profit-Live, Inc.

37. The $100,000.00 paid to Defendant ProfitLive, Inc. by Plaintiffs was not used to produce a website, to pay for expenses associated with Creative Real Estate Workshops, and to maintain a radio program on WBAP 820 AM, for the promotion of Defendants the ProfitLive Partnership or ProfitLive, Inc.

38. No properly operational website was ever produced for Defendants Profit-Live Partnership or ProfitLive, Inc.

39. Defendant Lombardo registered the domain name profitlive.com in or around May of 2000.

40. At least a portion of the $100,000.00 paid by Plaintiffs to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership was used to sponsor, host, promote, or pay for a meeting or meetings in August 2001 to promote the activities of Maximum Benefits L.L.C., the Franklin Group, or entities other than the Profit-Live Partnership.

41. The ProfitLive Partnership and ProfitLive, Inc. were not reimbursed for the payments made to sponsor or host the meeting or meetings in August 2001 to promote the activities of Maximum Benefits L.L.C., the Franklin Group, or entities other than the ProfitLive Partnership.

42. None of the revenues or profits realized at the meeting or meetings promoting the activities of Maximum Benefits, L.L.C. or the Franklin Group or entities other than the ProfitLive Partnership were paid to the ProfitLive Partnership or ProfitLive, Inc.

43. Defendants Woy and Lombardo attended and/or participated in the meeting or meetings described in Request for Admission No. 40.

44. Defendants Woy and Lombardo knew that part of the $100,000.00 paid by Plaintiffs to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership was being used to sponsor, host, promote, or pay the meeting or meetings described in Request for Admission No. 40 and that the ProfitLive Partnership and ProfitLive, Inc. were not reimbursed for such payments.

45. Defendants Woy and Lombardo did not object to the use of Plaintiffs' money to sponsor, host, promote, or pay the meeting or meetings described in Request for Admission No. 40 and approved or ratified the use of these funds for such purpose.

46. After Plaintiffs paid $100,000.00 for a purported interest in the ProfitLive Partnership, Defendants Franklin and Woy participated in Wealth Radio infomercials on WBAP radio to promote Maximum Benefits L.L.C., the Franklin Group, or entities other than the ProfitLive Partnership and ProfitLive, Inc.

47. Defendants Franklin and Woy knew that the Wealth Radio infomercials described in Request for Admission No. 46 were paid for and advertised as sponsored by the ProfitLive Partnership and/or ProfitLive, Inc.

48. Other than one check for $1000.00, Plaintiffs never realized any profits or received any revenues or payment of any kind from the ProfitLive Partnership or ProfitLive, Inc. as a result of their investment in the ProfitLive Partnership and ProfitLive, Inc.

49. At the time the representations were made, the partners of Defendant the

ProfitLive Partnership and the officers, directors, and shareholders of ProfitLive, Inc. knew that the representations made by Franklin in Requests for Admission Nos. 1, 2, 3, 4, and 5 were false or that Franklin was making the representations recklessly without any knowledge of the truth and as positive assertions.

50. The partners of Defendant the ProfitLive Partnership and the officers, directors, and shareholders of ProfitLive, Inc. approved or ratified the misrepresentations made by Franklin in Requests for Admission Nos. 1, 2, 3, 4, and 5.

51. The partners of Defendant the ProfitLive Partnership and the officers, directors, and shareholders of ProfitLive, Inc. intended for Plaintiffs to rely on the misrepresentations in Requests for Admission Nos. 1, 2, 3, 4, and 5 in making the $100,000.00 payment to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership.

52. The partners of Defendant the ProfitLive Partnership and the officers, directors, and shareholders of ProfitLive, Inc. knew that Franklin omitted the material facts described in Requests for Admission Nos. 22, 23, and 24 in inducing Plaintiffs to pay $100,000.00 to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership.

53. The partners of Defendant the ProfitLive Partnership and the officers, directors, and shareholders of ProfitLive, Inc. approved or ratified the omissions of material facts described in Requests for Admission Nos. 22, 23, and 24.

54. The partners of Defendant the ProfitLive Partnership and the officers, directors, and shareholders of ProfitLive, Inc. intended for Plaintiffs to rely on the facts as stated by Franklin, with the material facts described in Requests for Admis-

sion Nos. 22, 23, and 24 having been omitted, in making the $100,000.00 payment to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership.

55. Defendant Franklin conspired with the partners of the ProfitLive Partnership to defraud Plaintiffs out of $100,000.00 by making the misrepresentations in Requests for Admission Nos. 1, 2, 3, 4, and 5 or by omitting the material facts described in Requests for Admission Nos. 22, 23, and 24 to induce Plaintiffs to pay $100,000.00 to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership.

56. Defendant Franklin conspired with the partners of the ProfitLive Partnership to use the $100,000.00 paid by Plaintiffs to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership for the benefit of Franklin and the partners of the ProfitLive Partnership, and for the benefit of Maximum Benefits, L.L.C. and the Franklin Group or entities other than the ProfitLive Partnership.

57. Defendant Franklin communicated with the partners of the ProfitLive Partnership to plan a course of action to induce Plaintiffs to pay $100,000.00 to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership so that Franklin and the partners of the ProfitLive Partnership could divert the $100,000.00 away from the ProfitLive Partnership for the benefit of Franklin, the partners, Maximum Benefits, L.L.C., the Franklin Group, or entities other than the ProfitLive Partnership.

58. Defendant Franklin communicated with the partners of the ProfitLive Partnership regarding the misrepresentations made in Requests for Admissions Nos. 1, 2, 3, 4, and 5 or regarding the omission of material facts described in Requests for Admissions Nos. 22, 23, and 24 as part of the plan to induce Plaintiffs to pay $100,000.00 to ProfitLive, Inc. for a purported interest in the ProfitLive Partner-

ship so that Franklin and the partners of the ProfitLive Partnership could divert the $100,000.00 away from the ProfitLive Partnership for the benefit of Franklin, the partners, Maximum Benefits, L.L.C., the Franklin Group, or entities other than the ProfitLive Partnership.

59. Defendant Franklin conspired with the officers, directors, and shareholders of ProfitLive, Inc. to defraud Plaintiffs out of $100,000.00 by making the misrepresentations in Requests for Admission Nos. 1, 2, 3, 4, and 5 or by omitting the material facts described in Requests for Admission Nos. 22, 23, and 24 to induce Plaintiffs to pay $100,000.00 to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership.

60. Defendant Franklin conspired with the officers, directors, and shareholders of ProfitLive, Inc. to use the $100,000.00 paid by Plaintiffs to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership for the benefit of Franklin and the officers, directors, and shareholders of ProfitLive, Inc, other than Plaintiffs, and for the benefit of Maximum Benefits, L.L.C. and the Franklin Group and entities other than the ProfitLive Partnership.

61. Defendant Franklin communicated with the officers, directors, and shareholders of ProfitLive, Inc. to plan a course of action to induce Plaintiffs to pay $100,000.00 to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership so that Franklin and the officers, directors, and shareholders of ProfitLive, Inc. could divert the $100,000.00 away from the ProfitLive Partnership for the benefit of Franklin, the officers, directors, and shareholders of ProfitLive, Inc., Maximum Benefits, L.L.C., the Franklin Group, or entities other than the ProfitLive Partnership.

62. Defendant Franklin communicated with the officers, directors, and shareholders of ProfitLive, Inc. regarding the misrepresentations made in Requests for Admissions Nos. 1, 2, 3, 4, and 5 or regarding the omission of material facts described in Requests for Admissions Nos. 22, 23, and 24 as part of the plan to induce Plaintiffs to pay $100,000.00 to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership so that Franklin and the officers, directors, and shareholders of ProfitLive, Inc. could divert the $100,000.00 away from the ProfitLive Partnership for the benefit of Franklin, the officers, directors, and shareholders of ProfitLive, Inc., Maximum Benefits, L.L.C., the Franklin Group, or entities other than the ProfitLive Partnership.

63. Plaintiffs were damaged as a proximate cause of the conspiracy between Defendants Franklin and the partners of the ProfitLive Partnership and the officers, directors, and shareholders of ProfitLive, Inc.

64. To date, Plaintiffs have been actually damaged in an amount exceeding the $100,000.00 paid to ProfitLive, Inc. in pursuing Plaintiffs' claims (not including attorneys' fees) as a proximate cause of the conspiracy and fraud perpetrated by Defendants Franklin, the ProfitLive Partnership, and ProfitLive, Inc.

65. An amount of punitive damages equal to twice the actual damages incurred by Plaintiffs as a result of the fraud and conspiracy by Defendants Franklin, the ProfitLive Partnership and ProfitLive, Inc. is a reasonable amount of punitive damages for the conduct of these Defendants.

66. Defendant W. Jordan Woy is an officer, director, or shareholder of Defendant ProfitLive, Inc. and a partner in the ProfitLive Partnership.

67. Defendant Jay M. Lombardo is an officer, director, or shareholder of Defendant ProfitLive, Inc. and a partner in the ProfitLive Partnership.

68. On May 25, 2001, Defendant W. Jordan Woy was an officer, director, or shareholder of Defendant ProfitLive, Inc. and a partner in the ProfitLive Partnership

69. On May 25, 2001, Defendant Jay Lombardo was an officer, director, or shareholder of Defendant ProfitLive, Inc. and a partner in the ProfitLive Partnership.

70. At the time the representations were made, Defendants W. Jordan Woy and Jay Lombardo knew that the representations made by Franklin in Requests for Admission Nos. 1, 2, 3, 4, and 5 were false or that Franklin was making the representations recklessly without any knowledge of the truth and as positive assertions.

71. Defendants W. Jordan Woy and Jay Lombardo intended that Plaintiffs rely on the misrepresentations made by Franklin in Requests for Admission Nos. 1, 2, 3, 4, and 5 in making the $100,000.00 payment to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership.

72. At the time of the omission, Defendants W. Jordan Woy and Jay Lombardo knew that Franklin omitted the material facts described in Requests for Admission Nos. 22, 23, and 24 in inducing Plaintiffs to pay $100,000.00 to ProfitLive, Inc.

73. Defendants W. Jordan Woy and Jay Lombardo intended that Plaintiffs rely on the facts as stated by Franklin, with the material facts described in Requests for Admission Nos. 22, 23, and 24 having been omitted, in making the $100,000.00 payment to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership

74. Defendants W. Jordan Woy, Jay Lombardo, and Franklin conspired to defraud Plaintiffs out of $100,000.00 by making the misrepresentations in Requests for Admission Nos. 1, 2, 3, 4, and 5 or by omitting the material facts described in Requests for Admission Nos. 22, 23, and 24 to induce Plaintiffs to pay $100,000.00 to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership.

75. Defendants W. Jordan Woy, Jay Lombardo, and Franklin conspired to use the $100,000.00 paid by Plaintiffs to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership for the benefit of themselves personally or the benefit of Maximum Benefits, L.L.C. and the Franklin Group or entities other than the ProfitLive Partnership.

76. Defendant Franklin met with Defendants W. Jordan Woy and Jay Lombardo to discuss and plan a course of action to induce Plaintiffs to pay $100,000.00 to ProfitLive, Inc. for a purported interest in the ProfitLive Partnership so that Franklin, Woy, and Lombardo could divert the $100,000.00 away from the ProfitLive Partnership for the benefit of Franklin, Woy, Lombardo, Maximum Benefits, L.L.C., the Franklin Group, or entities other than the ProfitLive Partnership.

77. Plaintiffs were damaged as a proximate cause of the conspiracy between Defendants W. Jordan Woy, Jay Lombardo, and Franklin.

78. Plaintiffs have been damaged in an amount exceeding the $100,000.00 paid to ProfitLive, Inc. in pursuing Plaintiffs' claims (not including attorneys' fees) as a proximate cause of the conspiracy and fraud perpetrated by Defendants W. Jordan Woy, Jay Lombardo, and Franklin.

79. An amount of punitive damages equal to twice the actual damages incurred by Plaintiffs as a result of the fraud and

conspiracy by Defendants Woy, Lombardo, and Franklin, is a reasonable amount of punitive damages for the conduct of these Defendants.

Dated: October 1, 2003.

Respectfully submitted.

/s/ John W. MacPete
JOHN W. MACPETE
Texas Bar No. 00791156
PAUL V. STORM
State Bar No. 19325350
ROBIN L. BARNES
State Bar No. 24009952
Storm & Hemingway
8117 Preston Road
Suite 460
Dallas, Texas 75225
Telephone: (214) 292–8998
Fax: (214) 292–8999

ATTORNEYS FOR PLAINTIFFS CHERYL M. SURBER AND JOHNSON PROPERTY INVESTMENTS, INC.

Evelyn V. Keyes, J., filed dissenting opinion on motion for en banc reconsideration.